STATE v. HERSCHELL STUCKER, Appellant.—No. 38533.—180 S. W. (2d) 719.

Division Two, June 5, 1944.

*Roy McKittrick,* Attorney General, and *Aubrey R. Hammett, Jr.,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant was convicted in the circuit court of Vernon county of an assault on one Jessie (Stucker) Hill, his divorced wife, with intent to kill, using a pistol loaded with powder and leaden balls. The crime is a felony punishable under Sec. 4408[1] by "not less than two years" imprisonment in the penitentiary. The maximum punishment is therefore life imprisonment. Sec. 4850. The imprisonment fixed by the jury was twenty years. An opinion was written in this court at the January call, 1944 of the September term, 1943. At that time the case was here on the record proper, no bill of exceptions having been filed. Appellant protested in letters to our Clerk that he was having a bill of exceptions prepared but had been unable to obtain it because he was a poor person and confined in the penitentiary. For that reason our opinion was withheld and the cause carried over on our docket. The bill of exceptions has now been filed but appellant files no brief.

Only two points calling for discussion arise on the record proper. The first is that the information does not charge the appellant

---

[1] All references are to the Revised Statutes of 1939 and Mo. Stat. Ann., same section, unless otherwise noted.

1058

*shot* the prosecutrix with the pistol. It merely alleges he assaulted her with the pistol which was loaded with powder and leaden balls, with the intent of killing her. In Sec. 4408, supra, the criminal act specified is, shooting, assaulting or beating another with a deadly weapon. It was held in State v. Dildine, 330 Mo. 756, 51 S. W. (2d) 1, that when the averments in the information are like those here, it is to be construed as charging an assault with the firearm as used in the ordinary manner, that is, by shooting. So there is nothing in this point.

█ The next point is that neither the record proper nor bill of exceptions shows the appellant was present when his motion for new trial was overruled. Sec. 4054 declares no person charged with a felony can be tried "unless he be personally present during the trial." But the concluding proviso of the section further provides that when the record "shows that the defendant was present at the commencement or any other stage of the trial, it shall' be presumed, in the absence of all evidence in the record to the contrary, that he was present during the whole trial." The record here shows the appellant was present both before and after the court ruled on his motion for new trial. Furthermore, it has been held in this state from an early day that the hearing on an accused's motion for new trial is not such a material step in the proceeding as to require his presence thereat, within the meaning of Sec. 4054, supra. State v. Neal, 350 Mo. 1002, 1013(3), 169 S. W. (2d) 686, 693(7); State v. Kenyon, 343 Mo. 1168, 1185(13) 126 S. W. (2d) 245, 255(28). So we conclude there is nothing fatal in this point.

█ The first assignment in appellant's motion for new trial is that his counsel was not given a reasonable time to prepare for trial. The law is well established that one charged with crime is entitled to a fair opportunity to prepare his defense, and while the amount of time he may have rests largely in the discretion of the trial court, yet where appellant was denied such opportunity, this court will review the exercise of that discretion, and reverse and remand the cause if justice demands it.[2] But in all the cases just cited appellant's counsel had filed an application for continuance which was overruled. There was no such application in this case. The assault was committed on May 16, 1942, one-day after he had been released from the penitentiary on a prior conviction of forgery. Nearly five months later R. S. McFarland, a member of the Vernon county bar and the lawyer who had represented him in the forgery case, was appointed by the trial court as appellant's attorney because of his financial inability to employ counsel. This was on October 5, 1942, which was the first day of the term, and followed immediately after the filing of the information. On the next day, October 6, appellant entered a plea of not guilty

[2]State v. Richardson, 329 Mo. 805, 812, 46 S. W. (2d) 576, 579; State v. Kauffman, 329 Mo. 813, 823, 46 S. W. (2d) 843, 846; State v. Jackson, 344 Mo. 1055, 1058, 130 S. W. (2d) 595, 596.

and proceeded to trial on the same day, without protest or suggestion that he was not ready. We know of no decisions holding the accused can complain of want of time for preparation when he did not ask for it. But if it could be regarded as reversible error in any case, no such showing was made here.

 Appellant's defense was insanity. There were five witnesses for the State: the prosecutrix; a former police officer who had made the arrest, he being a soldier stationed in Michigan at the time of the trial; two neighbor women; and the 17 year old daughter of the prosecutrix and appellant. There also were five witnesses for the defense: the appellant; two former employers; the presiding judge of the County Court before whom appellant had been declared insane and committed to the State Hospital for insane patients at Nevada, in 1941; and Dr. Yater, who had been appellant's family physician. All these were witnesses on the question of appellant's insanity.

The appellant himself testified he had received a head injury when seven years old, which necessitated the removal of a portion of his skull, and resulted in epilepsy. These epileptic seizures would be accompanied by convulsions, slobbering and unconsciousness. It would take days for such seizures to clear up, but he would be sane though decreasingly dull and stolid between them. Alcoholic drinks would aggravate the condition. The State's evidence was that appellant had been drinking about the time of the assault, but that he had not had any epileptic fit. In rebuttal the State recalled the prosecutrix and two other witnesses, Dr. Barone an alienist at the State Hospital in Nevada when appellant was confined there, and sheriff Foland. These witnesses, also, were on the question of insanity and appellant's condition with reference to epileptic seizures when the crime was committed and at the time of his arrest. The trial was not unfair or one-sided, and there is no ground for reversal on this assignment.

 The next two assignments complain of the admission of the testimony of Dr. Barone. The first assignment charges that he was permitted to testify to facts and records of which he had no personal knowledge. The second is that his testimony showed appellant's mental condition at a time *prior* to the commission of the assault, instead of *at* that time. The facts are as follows. The appellant had testified on direct and cross-examination that after he had been an inmate of the State Hospital for a month ending April 29, 1941, "they" had a Staff meeting, declared he was not insane, and released him as a free man. Dr. Barone was later called as a State's witness. He testified he was a member of the Staff of the Hospital and present at the meeting when appellant was discharged. He was asked if he had a record of the Staff meetings showing what transpired after appellant was committed to the institution.

1060

An objection to the record was interposed. unless the witness would say he was the keeper thereof. The prosecuting attorney stated he did not desire to introduce the record as such, but merely that the witness refresh his memory from it. The court announced the testimony would be admitted in view of the appellant's previous testimony. Dr. Barone then proceeded to tell about the Staff meeting and what physicians were present. In giving this testimony he read part of the record of the meeting. He said appellant's condition was stated to the other physicians by Dr. Wariach, who was immediately in charge of the patient but out of town at the time of the trial. The appellant was not present when the discussion of his case began, but came afterwards. The whole Staff made a diagnosis of sanity. Dr. Barone had seen him around the Hospital before that. He said he and the other physicians at the meeting thought appellant was sane, this opinion being based partly upon Dr. Wariach's examination, record and statements, and partly on the fact that all of the doctors saw and questioned appellant at the Staff meeting. The record itself never was admitted in evidence.

We think there was no substantial error in the admission of this testimony, especially in view of the assignment made in the motion for new trial complaining that the witness had testified to facts and records of which he had no personal knowledge. It is evident that Dr. Barone did have some personal knowledge of the appellant's condition, and of the facts to which he testified. Furthermore it was all corroborative of the testimony the appellant, himself, had given; that he had epilepsy and was discharged as sane. This latter may also be said of appellant's other objection, that the testimony of Dr. Barone was concerned with appellant's mental condition on April 29, 1941, *prior* to the commission of the assault, and not on May 16, 1942 when it was committed. The theory of the defense evidently was that appellant's insanity was continuing and due to the permanent disease of epilepsy; and that that fact was prima facie established by his confinement in the State Hospital under an order and adjudication of the County Court. State v. Herring, 268 Mo. 514, 530(3), 188 S. W. 169, 173.

 Just why appellant further testified that he was discharged from the State Hospital as a sane man we do not know. But he did say that; and the fact that he was so discharged destroyed the presumption of insanity arising from his commitment to the asylum by the County Court. State v. Rose, 271 Mo. 17, 27, 195 S. W. 1013, 1017. Furthermore, insanity is an affirmative defense, State v. Murphy, 338 Mo. 291, 301(1), 90 S. W. (2d) 103, 108(1). And unless appellant's prior insanity was "habitual, permanent or chronic" (in other words if it was only recurring or intermittent) no presumption of continuity up to the time of the commission of the offense charged would flow from it. State v. Peterson (Mo. Div. 2), 154 S. W. (2d) 134,

138 (7, 8). The appellant introduced the foregoing evidence as to his mental condition in April, 1941, believing it tended to prove his insanity in May, 1942, when he committed the assault. The State covered the same ground on the theory that it tended to disprove insanity on the latter date. We think the court did not err in admitting the evidence.

The fifth assignment of error in the motion for new trial complains of misconduct of the jury, "in considering what should be done with defendant because of his mental condition, rather than his guilt or innocence of the charge." The motion was verified by the affidavit of the appellant. But no effort was made to substantiate the allegation.

The sixth and last valid assignment in the motion charges the punishment was excessive and due to the bias and prejudice of the jury. The punishment assessed by the jury was twenty years imprisonment. Under the statute it could have been life imprisonment. The evidence showed appellant went to the home of his former wife saying he had "been planning this for months." He pursued her with a drawn pistol and when she jumped off a high porch and fell, he stood over her with his finger on the trigger. The 17 year old daughter came up behind him and put her hands over his eyes, whereupon the mother seized the pistol and threw it away, thus averting a shooting. There is another assignment in the motion that the verdict was against the greater weight of the credible evidence. This assignment is too indefinite to conform to the new trial statute, Sec. 4125; and could not be sustained if it were reviewable.

We find no error in the record, and the judgment and sentence are affirmed. All concur.