**STATE of Missouri, Respondent,**

v.

**Robert BRYANT, Appellant.**

No. 49868.

Supreme Court of Missouri,

Division No. 2.

Feb. 10, 1964.

Don L. Schlapprizzi, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

Robert Bryant has been found guilty of an assault with malice, in so far as material here an offense defined in this language "(e)very person who shall, on purpose of malice aforethought, shoot at * * * another with a deadly weapon * * * with intent to kill * * * shall be punished by imprisonment in the penitentiary not less than two years." V.A.M.S. § 559.180.

These were the facts and circumstances as the jury could and did find them from the state's evidence. Robert and Ruby Bell lived in concubinage in a basement apartment at 3625 Cozzens Street. On May 20, 1961, after spending the morning at her mother's and next door with neighbors, Ruby returned to the apartment in the evening "Not drunk, I'd just say high." Robert came in some time later but Ruby does not remember what happened until after she regained consciousness in the hospital. She was admitted to the hospital however with a wound in the back of her head and after surgery has a metal plate in her head. At 11:25 patrolman Hill was "walking west on Cozzens at 3610 Cozzens when this man Robert Bryant walks up to me and pulls a pistol out of his right front trousers pocket and hands it to me, and tells me that he just killed his wife, and he led me to the basement at 3625 Cozzens and

pointed to the woman laying on the bed with a hole in her head. She was bleeding through the hole and he said that was her." The gun was loaded and there was one discharged shell still in the chamber. On the way to the police station, and after he was under arrest, Robert said to Hill "she was nagging him and he shot her, that he just got tired of the nagging so he shot her." Hill testified that at the station Robert said "that he had been drinking a small amount, about a third of a pint of wine, I believe he said it was, and that when he was trying to go to bed that Ruby Bell was nagging him and he got tired of the nagging and he went and got the pistol out of the dresser drawer and walked up about three feet away from her and shot her." Another policeman testified that Robert "stated that he shot Mrs. Bell after she had been nagging and arguing with him. He said he told her to leave and she wouldn't leave as he told her to." Still another police officer testified that "He stated she had been coming home intoxicated, drunk, and nagging him and he just got fed up with it. * * * He said she came home and they became involved in a small argument about her drinking and he told her to get out of the house and not come back and that she wouldn't leave, and he walked over and grabbed the pistol from the dresser."

In these circumstances it was appropriate to charge the appellant, adapting the language of the statute, with an assault with malice (V.A.M.S. § 559.180) which also by specific statute (V.A.M.S. §§ 556.220, 556.230) includes the lesser offense of an assault without malice, V.A.M.S. § 559.190. State v. Finnell (Mo.), 280 S.W.2d 110; State v. Dildine, 330 Mo. 756, 51 S.W. 2d 1. And the court hypothesized and submitted to the jury in separate instructions the appellant's guilt under both statutes, thus giving the jury the opportunity if it found the lesser included offense to affix a lesser punishment. The jury however found him guilty of the greater offense of an assault with malice and the evidence

supports that finding. State v. Finnell, supra; State v. Bongard, 330 Mo. 805, 51 S.W.2d 84.

■ Robert denied the statements attributed to him by the officers, instead, "I says she got shot." He said that he had "No intention or reason to use it (the gun) on her." His version of the shooting was that Ruby came in "all full of that drink," talking about killing her mother. He said that he was going to remove his gun from a dresser drawer and put it in a foot locker and this is what he said happened: "Well, I reached and grabbed the gun she started and ran into it or something, all I know the gun went off, I was so nervous, and she fell down and I called to her and when I put her on the bed I saw she was shot, and I tried to call the police but I was just too nervous and I went to that corner for the officer." Upon this testimony, presumably, the court gave this instruction:

"The Court instructs the Jury that a defense in this case is that even if the Defendant did shoot Ruby Bell, that he did so unintentionally, or as a result of a mere accident or misadventure. In this connection you are instructed that the Defendant is not required to prove that the shooting of Ruby Bell resulted from an accident, but the burden of proof is upon the State to show that it was not caused by an accident and that such shooting was intentionally done by the Defendant with the *intent of shooting* Ruby Bell, and the State must make this proof beyond a reasonable doubt. Unless the State has made this proof, then you should acquit the Defendant."

It is now argued on his behalf that because of the phrase "intent of shooting" rather than the more appropriate "intent to kill" the instruction is prejudicially erroneous. It is said that the instruction has the effect of charging the jury that the state's only burden was to prove that the "shooting was done 'with intent to shoot'" when the essential element of the greater

offense is "intent to kill." Upon oral argument appellant's counsel pressed the argument that this particular phraseology made the instruction conflict with instruction one which placed upon the state the burden of proving that he "made such assault with the intent then and there, on purpose, and of his malice aforethought, feloniously to kill Ruby Bell." Instruction one, incidentally, concluded by defining the words "wilfully," "on purpose," "malice aforethought" and "feloniously."

It is not necessary here to define "malice" as employed in the statute (State v. Martin, 342 Mo. 1089, 119 S.W.2d 298) or even to consider whether the appellant's version of the shooting required an instruction on accidental shooting. Neither is it necessary to consider whether all the instructions may be read as a whole and harmonized. The instruction admittedly refers to and defines the defense of "accident," it first tells the jury that the burden is upon the state to prove that such shooting was "intentional," which, under this statute, characterizes "malice" and means "an unlawful act intentionally done and determined upon before it was executed." State v. Hagerman (Mo.), 244 S.W.2d 49, 52. Or to quote precisely in context all of the applicable language "the burden is upon the State to show that it was not caused by an accident and that such shooting was intentionally done by the defendant *with the intent of shooting Ruby Bell.*" The italicized language in this context refers to and means "intentionally * * * with the intent of shooting Ruby Bell," that is, as the instruction could have said plainly, immediately following the phrase objected to, "not by accident." So read in this context the instruction does not conflict with instruction one and is not confusing or misleading and therefore prejudicially erroneous.

■ The other point urged in the defendant's behalf is that the 18 years' imprisonment imposed by the jury "was cruel and unusual punishment resulting from prejudicial and inflammatory evidence adduced

by the State" and that the court abused its discretion by imposing a 14 years' sentence which also is "cruel and unusual punishment." The evidence pointed to as inflammatory, although not objected to when admitted, was the testimony as to Ruby's two hospitalizations, the nature of the wound in her head, the operation and insertion of the metal plate. Contrary to the appellant's assertion the nature and character of Ruby's wound was relevant and "permissible for the purpose of showing that the assault was made with intent to kill, and some instrument used which was adequate for the accomplishment of the purpose intended." State v. Spaugh, 199 Mo. 147, 150, 97 S.W. 901; State v. Allen (Mo.), 343 S.W.2d 63, 67. The fact that other assaults, some of them perhaps more vicious, were punished by sentences of only two years' imprisonment (State v. Spaugh, supra; State v. Finnell, supra) does not establish that the sentence, as reduced by the court, was cruel and unusual punishment or that the court abused its discretion in not further reducing the sentence. The sentence could have been much greater, 14 years' imprisonment is within the limits fixed by the statute, "not less than two years" (V.A.M.S. § 559.180), and in other cases it has been held that sentences of 20 and 25 years were not cruel and unusual punishment and that there was no abuse of discretion in the courts' refusal to reduce the sentences. State v. Bongard, supra; State v. Allen, supra; State v. Stucker, 352 Mo. 1056, 180 S.W.2d 719.

■ In the trial of his case the appellant was represented by the public defender and upon this appeal he has been represented by most capable and industrious court-appointed counsel. In addition to what counsel has done in safeguarding his rights, the appellant, independently of counsel, took certain steps in the trial court and has filed a brief in this court. After the conclusion of the trial, after verdict, after a motion for new trial had been filed and overruled, and after allocution, judgment and sentence, the appellant, being then in custody since he did not give bond, filed "under the collateral provisions" of Rule 27.26, V.A.M.R. a "Motion to Vacate Unlawful Sentence" which the trial court overruled. In this unusual manner the appellant attempted to raise several matters which have been disposed of, to wit, the sufficiency of the information and whether the offense was appropriately "laid" under § 559.180 as well as whether the evidence supports the verdict and judgment. In addition, the appellant sets forth what he says were the facts as to his arrest and detention for more than twenty hours and being "held" for five days "incommunicado" all of which he says was illegal and violated due process. Aside from the fact that there is no claim here of a coerced confession, there is an orderly procedure prior to and during trial by which to raise any problems arising out of an allegedly illegal arrest and detention. There is no explanation for the failure to employ the general rules and more importantly, perhaps, it is not made to appear just how this issue affects either the merits of the case or the appellant's right to a fair trial. With the record in this posture these additional matters urged by the appellant are not valid grounds or reasons for collateral attack upon the judgment or for invoking Rule 27.26 and therefore the appellant's motion was properly overruled.

Since, as indicated, the briefed assignments of error are without merit and there is no error as to those matters upon the record before the court (Sup.Ct. Rule 28.02), the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.