**STATE of Missouri, Respondent,**

v.

**Melvin Leroy TYLER, Appellant.**

**No. 40843.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 18, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

Ralph A. Dobberstein, William R. Kirby, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

DOWD, Judge.

Defendant appeals from his conviction by a jury of two counts of robbery first degree by means of a dangerous and deadly weapon, § 560.120 RSMo 1969, § 560.135 RSMo 1975 Supp., two counts of assault with intent to commit rape without malice aforethought, § 559.190 RSMo 1969, and armed criminal action, § 559.225 RSMo 1976 Supp. Defendant was sentenced to fifty years imprisonment on each count of robbery first degree, to five years imprisonment on each count of assault with intent to rape without malice aforethought and fifty years imprisonment for armed criminal action, all terms of imprisonment to be served consecutively. We affirm in part and reverse in part.

Evidence supporting the verdicts showed that on the morning of December 27, 1976, defendant entered the home of Ralph and Mary Petersen and their daughter Christine. Prior to his entry he had approached Christine's friend, Laura Harmon, while she was sitting in the Petersen yard and had asked Laura if the neighbors were home. At this time Laura's sister, Angie Harmon, was tapping at Christine's bedroom window to get her attention. Laura and Angie Harmon entered the Petersen home and went to Christine's bedroom where they saw defendant walk by the window. A few minutes later as Mrs. Petersen was passing the bathroom door defendant put a gun to her side and ordered her into the bedroom where her husband was sleeping. Defendant stated "I want the two little girls that came into this house. They stole something out of my car." Mr. Petersen told defendant that the girls had spent the night there and could not have stolen anything. He struck Mr. Petersen, obtained a knife from the kitchen, cut the telephone line, and ordered Mr. and Mrs. Petersen into a closet. Defendant forced Christine and Laura into Christie's bedroom and ordered them to remove their clothes. Christine hesitated and defendant hit her on the head with the butt of the knife. When Laura began screaming he hit her on the head with the butt of the gun. Eventually both girls removed their clothes. Defendant advanced toward them,

unzipping his pants. Angie was hiding under the bed while defendant was in Christine's bedroom. Meanwhile, Mr. and Mrs. Petersen had pushed open the closed door. They saw Laura and Christine in the hallway naked, and Laura was covered with blood. Defendant left Christine and Laura in the bedroom and walked out to confront Mr. and Mrs. Petersen and asked for money. Mr. Petersen gave him $100. There was testimony that Mrs. Petersen's wallet containing her credit cards was missing from her purse in the living room after defendant left. Defendant was arrested the next day, December 28, in Kansas City, Missouri. He had in his possession a .25 caliber pistol and a wallet containing the Petersen's credit cards.

■ Defendant raises ten points on appeal, and we address them seriatim. He first contends the trial court erred in failing to obtain a written waiver of counsel contrary to Sec. 600.050 RSMo 1976 Supp. and the mandate of *Peterson v. State*, 572 S.W.2d 475 (Mo. banc 1978).

Defendant did not raise this alleged error at any pre-trial proceedings, during trial or in his motion for new trial. Thus, he has not preserved it for review.

■ Furthermore, we decline to invoke the plain error rule. The general rule concerning the application of the plain error rule is that it is discretionary, *State v. Ball*, 591 S.W.2d 715, 716[3] (Mo.App.1979), should be used sparingly, and is limited to cases where there is a strong clear showing of manifest injustice. *State v. Davis*, 566 S.W.2d 437, 447[2–3] (Mo. banc 1978); *State v. Lue*, 598 S.W.2d 133, 137[2] (Mo. banc 1980). When guilt is established by overwhelming evidence, no injustice will result from refusal to invoke the plain error rule. *State v. Ellis*, 567 S.W.2d 454, 457[3] (Mo. App.1978); *State v. Ball, supra*. In addition, defendant has the burden of proving that the alleged error amounted to manifest injustice. *State v. Johnson*, 586 S.W.2d 437, 441[5] (Mo.App.1979). Here, overwhelming evidence established guilt and defendant failed to meet his burden in showing manifest injustice occurred.

■ Defendant was no stranger to the judicial system. In the years prior to these charges he had filed innumerable petitions for extraordinary relief writs on his own behalf and on behalf of many inmates in the Department of Corrections, had represented himself on other previous charges and had filed several civil lawsuits. After he was charged here and as early as February, 1977, defendant filed pro se his Motion for Discovery, Motion for Change of Venue and Application for Appointment of Special Investigator. These filings were only the first group of approximately 64 pre-trial applications and motions defendant eventually filed.

Defendant invited the alleged error by his equivocal conduct exhibited throughout the proceedings. Initially he asserted his right of self-representation and a hearing was held before the Honorable Clyde S. Cahill, Jr. to determine whether he knowingly and intelligently asserted that right. A public defender was present during the hearing and the court offered to appoint the public defender to represent or to assist defendant as co-counsel. Defendant declined the offer saying that it was "a good thing to have a lawyer sitting there" with him and one should have effective counsel, but he did not want the assistance of the public defender "at this time." The court noted it would be difficult for defendant to represent himself because he did not have trial experience but defendant replied he was a certified law librarian, was competent to do legal research and had conducted paralegal training. Defendant's statements belie his equivocal attitude toward representation.

The case was then reassigned to the Honorable Harold L. Satz for the disposition of pre-trial motions. Defendant filed several motions seeking access to a law library. The court offered defendant the assistance of counsel to do legal research as an alternative to access to a law library and defendant refused. At the hearing on defendant's motion for appointment of a special investigator defendant refused appointment of the

public defender's office and his investigator to assist in investigation, although he requested and was given the assistance of the public defender to take depositions. After many days of hearing on the various motions, and after his repeated refusals of appointment of counsel, defendant remarked that he felt he was entitled to the assistance of counsel under the Sixth Amendment to the U. S. Constitution. Yet, he did not accept appointment of counsel.

The case was then assigned to the Honorable Thomas Challis. Defendant requested a process server and one was appointed for him. At a pre-trial conference the court again explained the disadvantages of self-representation to defendant and offered to appoint counsel. Defendant again declined stating that all the circuit judges and the prosecutor's office were prejudiced against him, that he had tried to disqualify them and that he did not trust any lawyers. Apparently defendant did not want the appointment of co-counsel either because presumably, he would not trust them. However, during one exchange between the court and defendant, defendant remarked that he had not had the benefit of co-counsel. The court inquired if he had requested co-counsel and he said no. It must be noted that the Honorable Judge Cahill had offered sua sponte the appointment of co-counsel. Eventually defendant requested "assistance of counsel," explaining that he needed "some type of assistance" but not co-counsel. The court agreed to consider defendant's request in limited areas and again offered to appoint counsel to represent defendant, which was refused. The court later asked defendant to define his motion of assistance of counsel. Defendant responded he was capable of handling the case himself but then retracted his response by commenting that "I couldn't give myself a fair trial. . . ." This reply typifies defendant's equivocation.

Defendant became disenchanted with the Honorable Judge Challis and disqualified him. Trial was assigned to the Honorable Daniel T. Tillman and defendant immediately filed a motion to disqualify him. The Honorable Judge Tillman offered to appoint co-counsel to aid defendant in the proceedings. Defendant said he consistently asserted his right of self-representation but then contradicted himself by informing the court he needed co-counsel, and would benefit from counsel because a person who represents himself has a fool for a client. Yet defendant then stated only he could protect his rights. After a heated discussion regarding the prejudice of the entire circuit court defendant threatened to file 50,000 lawsuits and, indeed, defendant did file a complaint of oppression in office against the Honorable Judge Tillman.

Throughout the proceedings before four trial judges defendant twisted the facts, became belligerent, continued to file motions which lengthened the course of the case and added to its complexity, and equivocated in his position regarding representation. He stated at various times that he needed the assistance of counsel but could not accept appointment of counsel, that he wanted co-counsel but had been refused his request for same even though two trial judges offered to appoint co-counsel, and that he wanted counsel for limited purposes. The trial court granted defendant's requests for assistance of counsel to take depositions and for appointment of a process server and an investigator. The trial court afforded defendant every opportunity to receive the assistance of counsel and allowed defendant the greatest latitude in presenting his case. We find that no prejudice, no manifest injustice and no miscarriage of justice occurred.

Defendant next argues the trial court erred in denying his Motion for Disqualification of Judge for Bias and Prejudice because the trial judge "had pre-judged the defendant as guilty," contending the trial judge reminded the prosecutor to object, and reminded the jury that defense witnesses were confined to institutions, because the court allowed the State to present unendorsed rebuttal evidence and because the court was generally prejudiced in its rulings.

During the course of a pre-trial hearing on July 17, 1978 before the Honorable Thomas W. Challis defendant orally requested a disqualification of judge. Defendant immediately filed a written Motion for Disqualification of Judge which was granted. The case was then reassigned to the Honorable Daniel T. Tillman and the proceedings continued on July 18, 1978. Defendant filed a second Motion for Disqualification of Judge for Bias and Prejudice directed to the Honorable Judge Tillman, which was denied. Defendant's point on appeal stems from the denial of this second motion to disqualify.

■■■■ Rule 30.12, which was in effect at the time of these proceedings, provided that only one disqualification of judge was allowed in any one criminal case. *Hontz v. State*, 574 S.W.2d 522, 524[2] (Mo.App.1978). Defendant had previously been granted a disqualification of judge and was not entitled to the second disqualification. No error occurred in the denial of the second application. Furthermore, our review of the voluminous record reveals the trial court's remarkable patience and fairness throughout the proceeding. Its conduct refutes defendant's claim that the court prejudged defendant's guilt. Mere adverse rulings during a case do not form the basis for a claim of bias and prejudice. See *Hanger v. United States*, 398 F.2d 91, 101 (8th Cir. 1968), *cert. denied*, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1968).

■■■■ Defendant next contends that the trial court erred in failing to appoint counsel to represent him, or in failing to appoint co-counsel to advise him. Defendant consistently refused the court's various offers to appoint counsel. He cannot now, in hindsight, claim error for his own refusal to accept the appointment of counsel.

■■■■ Defendant argues that the court abused its discretion in denying appointment of co-counsel because defendant lacked experience in conducting trials. Two comments will dispose of this argument. First, the trial court has discretion to allow hybrid representation, *State v. Ed-*wards, 592 S.W.2d 308 at 310 (Mo.App. 1979); *State v. Burgin*, 539 S.W.2d 652 at 654 (Mo.App.1976). In light of the court's comment, with which we agree, that defendant was uniquely qualified to represent himself, we find no abuse of discretion. Secondly, *Faretta v. California*, 422 U.S. 806, 834, 835, 95 S.Ct. 2525, 2540, 2541, 45 L.Ed.2d 562 (1975), does not guarantee defendant that his self-representation must be effective and, indeed, warns that a defendant who conducts his own defense relinquishes many benefits associated with the right of counsel.

■■■■ Defendant also contends that the trial court erred in allowing the rebuttal testimony of witness Louis Zlatich because the evidence did not explain, contradict, repel or disprove defendant's evidence and because the witness was not endorsed. The rule requiring endorsement of the State's witnesses does not apply to rebuttal witnesses. *State v. Curtis*, 544 S.W.2d 580, 581 (Mo. banc 1976) quoting *State v. Washington*, 383 S.W.2d 518, 524 (Mo. 1964). The critical factor, which defendant touches only obliquely, is whether or not the name of the rebuttal witness was disclosed. The record here shows that the name, address and statement of Mr. Zlatich appeared in the police report, a copy of which was given to defendant prior to trial. Therefore, defendant's reliance on *State v. Curtis, supra* at 582 which he quotes concerning the exclusion of rebuttal witnesses who refute an alibi defense has no application here because the court in *Curtis* upheld the exclusion where the State failed to disclose the name of the rebuttal witness.

■■■■ Defendant claims Zlatich's testimony was irrelevant because it did not contradict defendant's evidence. The trial court has discretion to admit or to exclude rebuttal evidence, *State v. Taylor*, 589 S.W.2d 302, 305[3] (Mo. banc 1979), and an appellate court will reverse only for abuse of discretion. *State v. Williams*, 442 S.W.2d 61, 65 (Mo. banc 1968) reversed on other grounds; *State v. Taylor, supra*. We find no abuse of discretion.

■■■■ Defendant has raised five issues which have not been preserved for review.

He challenges the submission of Instruction No. 18, the verdict-director for the offense of assault with intent to ravish without malice aforethought as to victim Laura Harmon, and Instruction No. 14, the verdict-director for the same offense as to victim Christine Petersen. Defendant submits the identical argument on both alleged instruction errors and claims that there was a "fatal" variance in the instructions, that the instructions submitted offenses for which he had not been charged and that the evidence did not support submission of the instructions.

Defendant failed to object to these instructions at trial and failed to challenge them in his motion for new trial. *See, State v. Murry,* 580 S.W.2d 555, 556[1] (Mo. App.1979); Rule 20.03 then in effect. The alleged errors have not been preserved for review. We have examined the alleged errors pursuant to the plain error doctrine and find no manifest injustice or miscarriage of justice. Variance applies to material and prejudicial differences between the statement of the charge in the indictment or information and the evidence offered to prove the charge. See Rule 26.04 and Sec. 546.080, RSMo 1969 in effect at the time of defendant's trial. Without stating this fundamental principle, defendant proceeds another step and argues that the instruction which varies from the indictment or information is improper. Unfortunately for defendant, no variance exists here between the charges, the proof, or the instructions. Our careful scrutiny of the record shows the evidence supported the instructions. Defendant's argument that he could not be convicted of assault with intent to ravish without malice aforethought, Sec. 559.190, RSMo 1968, because he was not charged with that offense, ignores the fact that assault without malice aforethought is a lesser included offense of an assault with malice, Sec. 559.180, RSMo 1978, with which defendant was charged. *State v. Bryant,* 375 S.W.2d 122, 123[1] (Mo. 1964).[4] A court may instruct on a lesser included offense although that offense was not specifically charged in an indictment or information. *See, State v. Smith,* 592 S.W.2d 165[1–2] (Mo. banc 1979).

Defendant also challenges the submission of Instruction No. 8, the verdict-director for the offense of robbery first degree by means of a dangerous and deadly weapon as to victim Ralph Petersen, and Instruction No. 10, the verdict-director for the same offense as to victim Mary Petersen. He alleges various evidentiary deficiencies, concluding the evidence did not support these instructions.

Again, defendant failed to object to these instructions at trial and failed to challenge them in his motion for new trial, *State v. Murry, supra,* so that he has not preserved them for review. And, again, we have examined the alleged errors pursuant to the plain error doctrine and find no manifest injustice or miscarriage of justice. Defendant points to inconsistencies in the testimony of the witnesses who identified defendant as the perpetrator of these offenses and concludes, as a result of the inconsistencies, that he could not have been the intruder in the Petersen home. Inconsistencies in testimony go only to the weight of the evidence, see e. g. *State v. McNeal,* 539 S.W.2d 722, 726[5] (Mo.App.1976), and it is not the function of a reviewing court to weigh the evidence. *State v. Kelly,* 539 S.W.2d 106, 109[3] (Mo. banc 1976); *State v. Roberson,* 548 S.W.2d 280, 282[4] (Mo.App.1977).

With respect to Instruction No. 8 defendant contends Ralph Petersen voluntarily surrendered money to defendant so that Ralph was not in fear, an essential element of robbery. Where a victim turns over money on the belief that failure to do so would result in physical harm, the taking of the money is accomplished by putting the victim "in fear of an immediate injury to his person" as charged. See *State v. Kelly, supra* at 109[1]; *State v. Nylon,* 563 S.W.2d 540, 543[10] (Mo.App.1978) wherein the court noted that fear is presumed where a deadly weapon is used to obtain money. Here, Ralph was struck by defendant's fists

---

4. The court in the *Bryant* case refers to Sec. 556.220, 556.230, RSMo 1969 which were repealed and replaced in Sec. 556.046, RSMo 1978. The comment to Sec. 556.046 notes that it follows the same approach of the prior sections.

and cut with defendant's knife before he gave money to defendant. Defendant also exhibited a gun. This evidence supported the element of fear.

With respect to Instruction No. 10 defendant contends the evidence did not prove that he removed Mary Petersen's wallet containing credit cards from her residence. Here, Mary testified she kept the credit cards in her wallet and that the wallet was in her purse. The purse was lying on a chair near the front door of the Petersen residence as defendant exited. When arrested, defendant had the credit cards in his possession. This evidence supports the element of taking.

The fifth issue which defendant has failed to preserve for review concerns the trial court's denial of his motions to suppress line-up identification, identification of physical evidence and in-court identification. Defendant failed to object to identification testimony during trial and, furthermore, conducted extensive cross-examination of identification witnesses. See *State v. Holland*, 534 S.W.2d 590 (Mo.App. 1976); *State v. Nauman*, 592 S.W.2d 258 (Mo.App.1979). After consideration of the point under the plain error doctrine, we find no manifest injustice or miscarriage of justice. The fact that defendant was seen by the victims several times on television, in photographs, at a lineup, at trial in another jurisdiction and at depositions and hearings on motion did not make the in-court identification of him defective. The fact defense witness Gregory Dorsey confessed to the commission of the crimes with which defendant was charged does not conclusively show the witnesses mistakenly identified defendant as the perpetrator because the credibility of Dorsey's confession was a matter for the jury who could disbelieve the confession. *State v. Amos*, 553 S.W.2d 700, 701[1] (Mo. banc 1977); *State v. Garrett*, 564 S.W.2d 347, 349 (Mo.App.1978). And, the lineup identifications and photographic displays were not so suggestive that defendant was denied due process. The factors enumerated in *State v. Higgins*, 592 S.W.2d 151, 160 (Mo. banc 1979) to determine the reliability of identification were met. The victims had nearly ¾ of an hour to observe defendant at close range; the general description they gave of the intruder matched defendant's appearance; they expressed no hesitancy when identifying defendant; they chose defendant's photographs as the perpetrator two days after the incident and attended a line-up only a week after the crimes were committed. Furthermore, there was an independent in-court identification of defendant by the victims.

Defendant's final point raises the issue of the validity of the armed criminal action conviction in that permitting the jury to convict the appellant of both First Degree Robbery by means of a Dangerous and Deadly Weapon and Armed Criminal Action placed him in double jeopardy. In light of the recent decision in *State v. Haggard*, 619 S.W.2d 44 (Mo. banc 1981) we are required to reverse the conviction for armed criminal action.

The judgment is reversed as to the conviction for armed criminal action and affirmed in all other respects.

STEPHAN, P. J., and STEWART, J., concur.