STATE of Missouri,
Plaintiff-Respondent,

v.

Elza SANFORD, Defendant-Appellant.

No. 51975.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 19, 1987.

Motion for Rehearing and/or Transfer
Denied June 17, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Elizabeth R. Brown, Office of the Sp. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant appeals after his conviction by a jury of first degree robbery and armed criminal action.  He was sentenced by the

court as a prior and persistent offender to concurrent terms of 25 and 10 years' imprisonment, respectively. We affirm.

On Friday, November 15, 1985, at about 5:50 p.m., Christopher Brown stopped to purchase gasoline for his car at a service station on North Skinker Boulevard. Defendant was a passenger in Brown's vehicle. Brown paid in advance for his purchase, and, as he was pumping the gas, defendant entered the building. Defendant walked up to the cashier's counter and asked attendant Steve Brownlee for a package of cigarettes. Brownlee rang up the sale on the cash register and turned around to get the cigarettes. When he turned back to give defendant the cigarettes, defendant was pointing a small silver handgun at him. Defendant told Brownlee to "give me the cash." When Brownlee had difficulty opening the cash register, defendant walked around to the attendant's side of the counter, placed the gun to the back of Brownlee's head, and said, "You got six seconds to open the cash register." Brownlee was able to open the cash register drawer, and defendant removed the plastic drawer insert, containing about $57.00, thereby setting off a "silent" alarm. Defendant instructed Brownlee to lie on the floor, and he departed. When Brownlee heard him leave, he went to the door of the building but did not see him. Brown was still at the gas pump, conversing with another customer, Robin Love.

Police arrived within about three minutes, and Brownlee described defendant to them. Police also questioned Brown and Love and arrested Brown, charging him with the robbery. The charges were later dropped. Brownlee's description included defendant's height, weight, age, complexion, and apparel. The interior of the building was well-lighted at the time of the robbery, and Brownlee saw defendant "face-to-face" and "looked him in the eye." Two days later Brownlee went to the district police station where he selected defendant's photograph from a group of "six or eight." Brownlee subsequently identified defendant in a lineup, and he identified him at trial. A handgun seized by police at the time of defendant's apprehension was admitted into evidence at trial, and Brownlee identified it as "the gun that [defendant] had on me."

Service station customer Love testified she saw defendant standing at the front passenger side of Brown's car at the time Brown began pumping gas but she did not see defendant enter the building. Love said she described defendant's face and complexion to investigating officers at the scene. Brown testified that defendant rode with him to the gas station, but he did not see him get out of the car or go into the building. Neither Love nor Brown saw defendant after the robbery.

Defendant was arrested on December 8, 1985. At the time of his arrest, he was the subject of several outstanding arrest warrants and "wanteds," and police had been looking for him for several months. At mid-morning on December 8, acting on an informant's tip, six police officers went to 5878 Maffitt, the location of the second floor apartment of Rozella Duckett. Police detective Frank Banaszek knocked on Duckett's front door (which was on the first floor), announced his presence, and ordered defendant to open the door. From the rear of the building Banaszek heard the sound of glass breaking and an officer yell that someone was attempting to escape through a window. Banaszek then kicked open the door, ran up the stairs, entered a rear bedroom, and arrested and handcuffed defendant who was standing about three feet from an open closet. The closet was about "two or three foot square." Banaszek looked in the closet to make certain no one was in it, and he "stretched" to see on top of a shelf about 5½ or 6 feet off the floor. About "half way back" on the shelf was a loaded nickel-plated .22 caliber Rohm two-shot derringer with pearl hand grips. Banaszek testified there was "some other stuff up there," in particular, clothing, but the handgun was not covered.

Defendant's evidence consisted of testimony by Duckett who said she and defendant had been married since September 12, 1985. She stated she had attended a vocational training school on Mondays through

Fridays throughout November 1985 and that defendant was always home when she returned at 6:00 p.m. She was certain this was the case on Friday, November 15, because, she stated, she never missed any classes and she had a test every Friday. The state then offered rebuttal testimony from Thomas Craig Jones, an official of the school Duckett attended, who stated Duckett had been absent seven days in November 1985, including the 15th.

On appeal, defendant alleges error in the trial court's refusal to suppress evidence of the handgun seized when defendant was arrested. He contends that, because he was "all the way across the room" with his hands "cuffed behind his back," the gun was not within his "immediate control," and the gun was not in plain view because Banaszek had "to stretch to see [it] back on the closet shelf...."

■ The trial court did not err in denying defendant's motion to suppress evidence of the handgun and in admitting the gun into evidence. The seizure here falls within the "plain view" doctrine. As we stated in *State v. Holt*, 695 S.W.2d 474 (Mo.App.1985):

> The plain view exception permits an officer to seize items without a warrant if: (1) the evidence is observed in plain view while the officer is in a place where he has a right to be; (2) the discovery of the evidence is inadvertent; and (3) it is apparent to the officer that he has evidence before him.

*Id.* at 477. The seizure by Banaszek meets the *Holt* test. Defendant's reliance on *State v. Dawson*, 675 S.W.2d 127 (Mo.App. 1984) is misplaced. There the offered evidence was inside a closed box on a shelf in a closet; the state conceded the evidence was not in plain view. *Id.* at 130.

■ Defendant also alleges error in the trial court's denial of his motion to suppress evidence of Brownlee's selection of his photograph from the photo array. Defendant did not object at trial to Brownlee's testimony about the photo selection;

therefore, this issue was not preserved for our review. *See State v. Moore*, 670 S.W.2d 550, 552 (Mo.App.1984). Nevertheless, we have carefully reviewed the record and conclude that, based on the totality of the circumstances, the police were not impermissibly suggestive in their conduct of the photo identification session with Brownlee. *See State v. Higgins*, 592 S.W.2d 151, 159–60 (Mo. banc 1979), *appeal dismissed*, 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980). Moreover, Brownlee's in-court identification of defendant was reliable under the totality of the circumstances test of *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *See Higgins*, 592 S.W.2d at 160.

In his final point on appeal, defendant alleges error in permitting school official Jones to testify concerning Rozella Duckett's absence from class on the day of the robbery. Defendant contends this testimony "was repetitious and cumulative" because it "dealt specifically with the same questions that the State explored during cross-examination. Further, this was evidence that should have been produced during State's case-in-chief."

■ The admission and scope of rebuttal testimony is a matter within the discretion of the trial court. *State v. Childress*, 698 S.W.2d 612, 614 (Mo.App.1985). Competent testimony that directly or indirectly tends to explain, contradict, repel, or disprove defendant's evidence may be offered. *State v. Jordan*, 699 S.W.2d 80, 82 (Mo. App.1985); *State v. Tyler*, 622 S.W.2d 379, 385 (Mo.App.1981). Absent a showing of an abuse of discretion, an appellate court will not reverse a trial court because it admitted rebuttal evidence. *Tyler*, 622 S.W.2d at 385.

■ Here the evidence was not repetitious or cumulative; Jones's testimony directly contradicted Duckett's testimony. Moreover, Jones's testimony could not have been offered in the state's case-in-chief; it was irrelevant until after Duckett testified. Jones's testimony was, therefore, proper

rebuttal testimony, and the trial court did not abuse its discretion in permitting it.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.