**Lyndon WRIGHT, Movant-Appellant,**

v.

**STATE of Missouri,
Respondent-Respondent.**

**No. WD 38598.**

Missouri Court of Appeals,
Western District.

Aug. 4, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 29, 1987.

Application to Transfer Denied
Nov. 17, 1987.

Fred Duchardt, Public Defender, Liberty, for Wright.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for State.

Before CLARK, P.J., REINHARD and DOWD, JJ.

REINHARD, Judge.

Movant appeals from an order denying his Rule 27.26 motion after an evidentiary hearing. We affirm.

Movant was initially charged with the capital murder of Clarence E. Wright on October 8, 1983, in Daviess County. After a preliminary hearing movant's original trial counsel withdrew and public defender David Miller was appointed to represent him. At Miller's request, Kevin Locke, an attorney who had extensive experience in murder and death penalty cases, was assigned to the case as co-counsel. Movant's counsel attempted, unsuccessfully, to suppress statements movant had made to the police.

The state showed no interest in plea negotiation until a witness needed to establish a taped statement by movant became unavailable. The state asked for a continuance; as a matter of trial strategy, movant's counsel adamantly opposed the state's request with movant's consent. After its motion for continuance was denied, the state offered to reduce the charge to second degree murder and recommend a life sentence if movant would plead guilty. A life sentence imposed upon conviction for second degree murder does not carry with it the 50 year prohibition on consideration for probation or parole which accompanies a life sentence in a capital murder case. § 565.008, RSMo 1978.

After discussing the proposal with his counsel movant instructed them to accept the plea bargain. At the guilty plea hearing movant was arraigned on the second degree murder charge, testified, and was questioned by the court. The court found his plea was knowing and voluntary, and movant was sentenced to life imprisonment.

In April 1986, movant filed a pro se Rule 27.26 motion and one of his trial attorneys, Miller, was appointed to represent him. On June 5, the court entered an order setting the case for an evidentiary hearing on July

3. On June 23, the movant filed an amended motion. No hearing was held on July 3, but apparently the hearing was reset for July 25. On July 21, Miller contacted the State Public Defender because he was concerned about an allegation of ineffective representation by trial counsel in the amended motion.

A public defender from an adjoining county met with movant on July 24 and obtained the case file. At 1:00 p.m. on July 25, the new counsel filed a motion for change of judge and a motion for continuance alleging insufficient time to prepare. After a hearing the trial court denied both motions and called the case. Movant's counsel said he was unprepared and presented no evidence. The state asked the court to take judicial notice of the files in the case and called movant and his former trial counsel, Miller and Locke, as witnesses. Movant's counsel conducted thorough cross-examination. The court dictated findings and conclusions into the record and denied the Rule 27.26 motion.

On appeal, movant challenges the trial court's denial of his motion for change of judge and motion for continuance.[1]

Rule 51.05, providing for automatic disqualification upon timely application, was cited as the basis for movant's motion for change of judge. Subsection (b) of that rule, effective at the time of movant's application, provided:

> (b) The application must be filed at least thirty days before the trial date or within five days after a trial setting date has been made, whichever date is later, unless the trial judge has not been designated within that time, in which event the application may be filed within ten days after the trial judge has been designated or at any time prior to trial, whichever date is earlier.

■ Movant conceded in his motion that he "[had] not met the technical [time] requirements of Supreme Court Rule 51.05." However, he argues on appeal that no trial setting was made and that his motion, filed on the day of the hearing, was therefore timely. Movant states that the record shows a trial setting for July 3, 1986, but does not indicate a resetting. Although the docket sheet provided us does not show a trial setting for July 25, the state's "Application for Writ of Habeas Corpus ad Prosequendum" alleges:

> 1. Defendant has ... filed a motion for review of said guilty plea and sentencing and that hearing on said motion is set for July 25, 1986, ...
>
> 2. Counsel for the defendant informs the State that it will be necessary for him to confer with the defendant on July 23rd and 24th, 1986, in order to prepare for said hearing.

The certification indicates a copy of this application was sent to movant's counsel on July 8 and filed with the court on July 10. Movant was obviously aware of the trial setting because in his motion for continuance he alleged: "On or before July 3, 1986, this Court set the above captioned cause for hearing on July 25, 1986 at 1:30 p.m." Movant's application for change of judge was not timely and the trial court was not obliged to grant it. *Gates v. State*, 515 S.W.2d 762, 763 (Mo.App.1974).

■ Movant argues that, despite the untimeliness of his motion, a change of judge should have been granted because Judge Sloan, who presided over both movant's trial proceedings and his Rule 27.26 motion, exhibited bias during the trial proceedings. The only reasons for disqualification cited in movant's motion for change of judge were movant's assertion that Judge Sloan would be a witness at the 27.26 hearing and certain allegations contained in movant's first amended petition.

During the hearing on his amended petition movant was questioned about those allegations, and the following exchange occurred:

> Q. Can you state what favoritism the judge showed me as the prosecuting attorney.

---

1. A motion filed under Rule 27.26 is an independent civil action. The procedure before the trial court and on appeal is governed by the Rules of Civil Procedure insofar as applicable. Rule 27.26(a).

A. The favoritism has to do with the fact that the judge since this information was fatally defective allowed it to go on through the courts.

Q. Again that goes to the amended information then, and you are contesting it. Is that correct?

A. Yes, I am.

Q. So it's not something specifically that Judge Sloan did to me or for me or against you. It's the interpretation of the defective amended information or what you say is defective. Is that correct?

A. The way you said it, yea, I'd have to say yes.

Movant's allegations of bias pertain solely to the allegedly erroneous ruling on the amended information. However, adverse rulings do not form the basis for a claim of bias and prejudice. *State v. Tyler*, 622 S.W.2d 379, 385 (Mo.App.1981). Nor do we find, based upon our examination of the amended petition, any reason for the judge to be called as a witness.[2] Thus the record indicates *no reason for disqualification existed*, and "[i]f, in fact, no reason for disqualification exists, the trial judge is under a duty to hear the matter however much he would personally like to remove himself from the case." *Manis v. State*, 659 S.W.2d 337, 339 (Mo.App.1983). Movant's complaints concerning the denial of his motion for change of judge are without merit.

Movant's second point alleges error in the denial of his motion for a continuance at his Rule 27.26 hearing. Whether a continuance should be granted is within the discretion of the trial court and every intendment on appeal is in favor of the court's ruling. *State v. Gasaway*, 720 S.W.2d 3, 5–6 (Mo.App.1986); *Overland Outdoor Advertising Co. v. Missouri State Highway Comm'n*, 616 S.W.2d 563, 566 (Mo.App.1981).

We cannot say that the court abused its discretion in considering and weighing the disruption and hardship which granting movant's motion would have caused against the minute potential of prejudice to movant created by proceeding to conduct the 27.26 hearing. The court was first informed of the motion for a continuance thirty minutes before the hearing was to begin, and all persons relevant to movant's Rule 27.26 motions were present for the hearing. Movant's presence had to be secured by a writ of habeas corpus, and Locke, one of movant's trial counsel, had travelled from Kansas City to testify. We note also that the motion court was aware of the procedural history of movant's case and was experienced in deciding issues raised by Rule 27.26 motions filed after a guilty plea.

Movant complains that his new counsel for the Rule 27.26 hearing had insufficient time to prepare, having been brought into the case on July 24, the day before the hearing. However, Miller, movant's original counsel for the motion, had been appointed as counsel for movant virtually at the inception of the 27.26 proceedings. Although Miller had some misgivings about his representation after the amended motion was filed on June 23, he took no action until four days before the July 21 hearing, when he contacted the State Public Defender. One day before the hearing, another member of the public defender system was assigned to the case. There is no indication in the record that Miller requested permission to withdraw or that movant sought new counsel, and no entry of appearance by movant's present attorney.

Movant was represented by counsel throughout the proceedings, including the evidentiary hearing on his Rule 27.26 motion. Movant and his trial counsel testified at that hearing and were cross-examined by movant's counsel. The prosecuting attorney, during direct examination, questioned movant about the complaints in his motions. Movant's counsel cross-examined him concerning any other claims he wanted to raise. Thus movant received a full hearing on his allegations and was given an

**2.** Rule 27.26, of course, specifically provides that the motion shall be filed in the court where the sentence was imposed and anticipates that the court will have some familiarity with the case. *See, State v. Tyler*, 440 S.W.2d 470, 475 (Mo. banc 1969).

opportunity, upon questioning by his attorney, to raise all potential claims.[3]

A fair reading of movant's testimony and his motions reveals that his principal complaints, simply stated, are that the amended information was defective and insufficient; he was misled by his counsel as to when he could expect to be paroled; his trial counsel ineffectively represented him in allowing him to plead guilty to a "fatally defective amended information"; and his life sentence was unfair in light of his brother's ten year sentence upon a guilty plea for involvement in the same murder.

The record reveals that movant was sufficiently informed of the charge against him by the information. *See, Helms v. State*, 625 S.W.2d 887, 888 (Mo.App.1981). Further, movant knew of the charge when the plea bargain was offered by the prosecution.

■ The record and testimony also indicate that pursuant to the state's offer, movant discussed the proposed plea bargain and other possibilities, including parole, with his counsel. Movant contends his counsel told him he could expect to be eligible for parole after serving four to six years of his sentence. However, Kevin Locke, who was assigned to assist Miller during the original capital murder proceedings, testified at the motion hearing that he told movant he could expect to serve from twelve to fifteen years before "making parole." Locke gave movant a book from the State Board of Probation and Parole that listed the salient factors considered by the board and the approximate length of time that would be served for certain sentences. Miller confirmed Locke's testimony. Additionally, movant testified at the guilty plea hearing he understood, at the time of his plea, that neither counsel nor the court could make any promises involving parole and that parole decisions were made by the State Board of Probation and Parole. Movant failed to prove he was misled by counsel.

■ Movant also complains that his trial counsels' representation was ineffective. Once a guilty plea results, the question of the adequacy of the representation by counsel is foreclosed unless there was such incompetency that the plea was entered involuntarily and unknowingly. *Rose v. State*, 612 S.W.2d 60,61 (Mo.App.1981). Two or three days prior to the entry of the guilty plea, counsel presented movant with a questionnaire which explained his rights and contained numerous questions designed to ascertain movant's understanding of his rights and the voluntariness of his plea. Counsel went through the questionnaire with movant, and movant answered the questions in counsel's presence. The questionnaire was subscribed and sworn to under oath.[4]

At the guilty plea hearing movant testified he understood that had he been found guilty of capital murder, as originally charged, he would have received a penalty of death or life imprisonment without probation or parole for fifty years. He understood no promises involving parole could be made. Movant was handed the questionnaire he had filled out previously, and testified that he understood the questions and his answers to them were correct. Movant also affirmed his understanding and acceptance of the plea bargain.

The prosecutor summarized the factual basis for the charge of second degree mur-

---

**3.** Although the state argues that the court could have ruled on movant's motion without an evidentiary hearing because the records and files conclusively show that he was not entitled to relief, that issue is not before us.

**4.** Under oath movant stated that he understood he was giving up his right to a jury trial; he had not been threatened or intimidated in any manner to cause him to enter a guilty plea; he understood by giving up his right to a jury trial the court would assess the punishment; he had

sufficient opportunity to discuss the facts with his attorneys and was "completely satisfied in every respect" with their representation; he understood the range of punishment; there had been "plea bargaining," and he was to receive "life in the penitentiary with possibility of consideration for parole." He stated he "caused the death of Clarence Wright by strangulation to prevent detection after assaulting Clarence Wright."

der from the statement made by movant the night of the murder.[5] Movant admitted he was entering a guilty plea because he did kill Clarence Wright by strangulation. The court found the plea was entered voluntarily and knowingly. We agree. We find no support for movant's claim of ineffective representation.

■ Finally, movant contends his life sentence was "fundamentally, disproportionately, and substantively unfair" because his brother received a ten year sentence upon a guilty plea for his involvement in the murder. An allegation that a sentence is excessive raises no claim in an action under Rule 27.26 when the sentence is within statutory limits. *Daniels v. State*, 726 S.W.2d 445, 447 (Mo.App.1987). A life sentence falls within the statutory bounds for second degree murder. §§ 557.021(3)(1)(a), 565.021(2), RSMo. 1986. A sentence cannot be considered to be excessive or disproportionate merely because it is greater than that received by a co-defendant. *State v. Shives*, 601 S.W.2d 22, 30 (Mo.App.1980); and see, *Jolliff v. State*, 665 S.W.2d 66 (Mo.App.1984).

Thus it appears that the allegations contained in movant's amended motion and his testimony either fail, as a matter of law, to state a claim for relief in a Rule 27.26 proceeding, are refuted by the record, or were not proven. Movant was given a full hearing at which he had an opportunity to express and establish any and all claims for relief. The deficiencies in his allegations could not have been corrected by another amendment of his 27.26 motion or further consultation with counsel. We fail to see how a continuance could have helped movant.

Having determined that the trial court did not abuse its discretion in denying the motion for a new judge and the motion for a continuance, we affirm.

All concur.

---

5. "The defendant struck the victim, knocked him down, and later in an effort to render him unconscious, tied a curtain around his neck, pulled on a curtain trying to render him unconscious. When it did not work, then tied a curtain around the victim's neck, causing strangulation, and the victim's death.

"The body was then loaded into a Ford Falcon automobile and driven approximately two miles away, where the Falcon was driven off the roadway and into a ditch along an embankment of a creek, where the body was later found by a passerby."