STATE of Missouri, Plaintiff-Respondent,

v.

Nathaniel WADE, Defendant-Appellant.

No. 36152.

Missouri Court of Appeals,
St. Louis District,
Division One.

March 2, 1976.

Motion for Rehearing or Transfer
Denied April 13, 1976.

Charles D. Kitchin, Public Defender, Richard A. Knutson, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Richard A. Heidenry, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

RENDLEN, Judge.

Defendant, Nathaniel Wade, found guilty of burglary second degree, § 560.070 RSMo. 1969, V.A.M.S., and sentenced to ten years

imprisonment by the court under the Second Offender Act, § 556.280 RSMo.1969, V.A.M.S., appeals that conviction. Appellant's questioning of the sufficiency of the State's case requires a detailed recital of the evidence.

On Sunday, August 12, 1973, Richard Klaus, an off-duty policeman working with an assigned partner as security guard inside the Transport Motor Express Building on North Seventeenth Street in St. Louis, was attracted by a "crashing" sound at the west side of the building.[1] Going there he observed someone breaking splinters to enlarge a fresh hole in the panel of an exterior door. Not able to see who was at the door, he waited and watched. When this activity ceased, Klaus went to the north end of the building and told his partner what was happening, asked him to stand by in case help was needed, returned to the broken door and waited. Presently appellant crawled head first through the hole in the door panel, stood up and proceeded about 15 feet into the building. Klaus stepped around a corner where he had been waiting, identified himself as a security officer, told appellant to halt, and as he did so, brought up the shotgun he was holding in his right hand. Appellant turned, saw Klaus and said: "Don't shoot, I'm just in here to hand things out through the panel." Searching appellant for weapons and finding none, Klaus handcuffed him to a nearby doorknob. As he was doing this, Klaus heard whispering outside the broken door and what sounded like footsteps. He phoned the police and walked around the building in search of other suspects. Several officers arrived in response to Klaus' call, advised appellant of his "rights" and took him to the district station for booking.

Appellant, testifying in his own defense, told quite another story. He claimed he was standing near the south side of the Transport Motor Express Building waiting for his car to be repaired at a shop across the street. He further testified Klaus came from the Transport building, approached appellant, pointed a shotgun at him, and asked him why he was there. The guard then forced appellant to accompany him into the building where he handcuffed and searched him, then took his wallet, $112, pocketknife and keys. These matters were categorically denied by Klaus.

After being advised of his rights at the station by officer Thurmon Moore, appellant stated that security guard Klaus had taken $150 from him. At that time officer Moore asked appellant if he had broken into the building and in response appellant said he had a narcotic habit. Testimony concerning this matter was as follows:

"Q. [Circuit Attorney] I want you to tell me what you asked him exactly, and what his response was?

A. [Witness Moore] I asked him if he broke into the place and I said, 'You know, the security guard said he caught you inside. Did you break out the panel?' And he said, 'I have to support my habit in some way.'

Q. What did you do then? Did you say anything to him in response to that?

A. I looked at him and said, 'It don't look to me you have a habit.' And he showed me his arms.

Q. He showed you the underside of his arms?

A. Yes, sir. He did.

Q. What did you observe there?

A. Marks down the veins of each arm."

As corroboration of his assertion that Klaus had taken $112 from him, appellant offered the arrest register to show appellant had no money or wallet when he was booked.

By his first two contentions of error, appellant asserts the evidence is insufficient to support the verdict, claiming the identity and guilt of defendant were not established and that defendant's alibi was confirmed by the evidence. By these contentions, appellant ignores the fact the jury chose not to believe him and instead was persuaded by the contrary evidence. The State's evidence established the necessary elements of the offense. In addition to abundant direct evidence as to the man-

1. The building occupies one-half of a city block, the west side facing an alley.

ner of entry and presence of appellant in the burglarized building, appellant's incriminating statement that he was in the building to hand things out through the door (admitted into evidence without objection) was sufficient to establish intent. Though the actual removal did not occur, it is unnecessary to show a completed act of stealing if a breaking and entering with accompanying intent appears. *State v. Smith,* 357 S.W.2d 120, 123[5] (Mo.1962). The intent to steal was further shown by the testimony of officer Moore who asked appellant if he had broken into the building and in response was told that appellant had a [drug] habit to support, showing the officer marks down the veins of each arm. From this the jury could find appellant was telling Moore why he had broken in and could reasonably infer the breaking and entering with intent to steal had indeed occurred. Where sufficiency of evidence is challenged, we review to determine if there is sufficient substantial evidence to support the jury's verdict and we consider as true all evidence favorable to the State including reasonable inferences that may be drawn therefrom. *State v. Cain,* 507 S.W.2d 437, 438[1] (Mo.App.1974).

█ Appellant urges his claim of alibi should have been believed; however, the jury is entitled to believe or disbelieve the testimony of a witness and consider the testimony of one witness as it relates to all the circumstances and facts in the case. It is the responsibility of the trier of fact to weigh and determine the credibility of the witnesses as presented and all other evidence in the case. *State v. Wynn,* 391 S.W.2d 245, 247[1] (Mo.1965). From the record we find sufficient substantial evidence to sustain the jury's verdict and judgment.

█ Appellant next contends the court erred in overruling his oral motion to suppress his admission made in the presence of security guard Klaus at the time of apprehension, i. e., "Don't shoot, I'm just in here

to hand things out through the panel." This untimely oral motion made on the morning of trial was overruled by the court and the point was not preserved for review as appellant failed to object when the statement or admission was offered at trial. *State v. Stavricos,* 506 S.W.2d 51, 57[10] (Mo.App.1974); *State v. Simone,* 416 S.W.2d 96, 100[11] (Mo.1967). Examining for plain error, we find none as the mere fact a weapon was pointed at appellant when he was told to halt, absent any interrogation or demand that he speak up, did not render appellant's spontaneous statement, involuntary. As the court said in *State v. Hart,* 292 Mo. 74, 237 S.W. 473, 479[9] (1922): "The weapon was not leveled at the defendant to induce him to confess, but to compel surrender. . . . He was bound to know that as soon as he yielded and was safely in custody no danger of violence remained." The security officer acted only with proper caution in apprehending a suspect in the apparent act of committing burglary who might have been armed. He could not, nor was he required to *prevent* the appellant from speaking until he could be informed of his Miranda rights. Neither time nor circumstances permitted giving the Miranda warnings and it is absurd to suggest the facts here required such warnings at the moment of arrest and before appellant could blurt his statement. Here, as in *State v. Hart, supra,* the gun was leveled at appellant to apprehend, not to coerce confessions. The statement was voluntary and thus was not constitutionally barred from use at trial. See Boyer v. State, 527 S.W.2d 432 (Mo.App.1975).

█ Appellant contends the court erred in denying his request for continuance [2] to permit calling officer Klaus for testimony in connection with the untimely motion to suppress. This contention is without merit. It appears appellant was less than diligent in securing Klaus' presence at the pre-trial motion. Further appellant failed to show how the testimony of Klaus would have

---

**2.** Immediately before trial appellant, in connection with his oral motion to suppress, also orally moved for a continuance.

proved the statements of defendant inadmissible and the oral request for continuance and to delay the trial for 24 hours, failed to conform to requirements of Rule 25.08, V.A.M.R.

Officer Klaus was the first witness for the State in the presentation of its case in chief. Appellant had a full and fair opportunity to cross-examine at that time and Klaus' testimony was diametrically opposed to that of appellant at the hearing on the motion to suppress. In light of these circumstances we cannot see how defendant was prejudiced by the court's actions.

In reviewing appellant's various requests for continuance, we note that: "The trial court has great discretion in granting or denying a continuance, and 'it requires a very strong showing to induce a higher court to interfere, and it will disturb the action of the trial court only where a clear abuse of discretion is shown.'" *State v. Thomas,* 433 S.W.2d 537, 539[1] (Mo.1968); *State v. Amerison,* 399 S.W.2d 53, 55[5] (Mo.1966); *State v. Cuckovich,* 485 S.W.2d 16, 22[8] (Mo. banc 1972). Finding no abuse of discretion in denying the oral application for continuance, the point is ruled against appellant.

▮▮▮ On the morning of the trial's commencement, appellant made an additional oral motion for continuance to permit time to employ counsel of his own choice in lieu of the assigned public defender. He stated he had hired an attorney who failed to appear and his family was then in the process of mortgaging their home to employ other counsel. The court, denying the motion, noted that appellant had had seven months since his arrest to procure private counsel. Under the court's questioning, appellant admitted he had no complaint concerning service of the public defender and though his family was attempting to raise money for a private attorney, appellant could not say when they might be ready. Appellant's assertion is correct that he is entitled to a fair chance to prepare his defense, *State v. Stucker,* 352 Mo. 1056, 180 S.W.2d 719, 720[3] (Mo.1944); however, he has failed to show how the court's denial of

his request for a continuance has prejudiced him in this regard. The right to counsel does not mean the accused is entitled to any particular attorney, *State v. Williams,* 419 S.W.2d 49, 54[8] (Mo.1967); and "the accused's right to private counsel is limited by the state's right to proceed to trial after the accused has been afforded a fair opportunity to engage his own counsel and adequate time to prepare his defense, and does not include the right to defeat or impede the orderly processes of the administration of justice." *State v. Crider,* 451 S.W.2d 825, 828[4] (Mo.1970). In view of the ample time appellant had to procure a private attorney and the fact that the public defender was ready to proceed, we find no abuse of discretion in denying a motion for continuance made on the day of trial. See *State v. Jefferies,* 504 S.W.2d 6 (Mo.1974).

Immediately after the noon recess on the second day of trial, the defense again moved for continuance, this time asking an opportunity to locate and produce one Tyree McIntyre as a witness. Defense counsel explained that at 9:30 that morning appellant had given him the name of Herbert McIntyre as a possible witness. During the noon recess, defense counsel had talked to Herbert McIntyre, then an inmate of the city jail, who in corroboration of defendant's testimony stated that he and his brother Tyree had witnessed the arrest of appellant on August 12, 1973. Counsel indicated he chose *not* to call Herbert since he had an extensive criminal record but wished to locate and call his brother Tyree, requesting a continuance until after four that afternoon. Counsel had a telephone number and address of Tyree McIntyre but the prospective witness could not be reached until after 4 p. m.

▮▮▮ The oral motion for continuance, understandably denied, did not meet the requirements of Rule 25.08, V.A.M.R., requiring movant to show "where the evidence may be and that due diligence has been used to obtain it." Further defense counsel by the oral motion for continuance did not show a subpoena had been issued for either Herbert or Tyree McIntyre. See

*State v. Johnson,* 461 S.W.2d 724, 726[3] (Mo.1971); and this motion failed to show Tyree McIntyre's residence or whereabouts and the probability of procuring his testimony and within what time that testimony might be obtained. As noted above, defense counsel admitted he was able to present by Herbert the same matters to which Tyree McIntyre might testify and Herbert was available but less desirable as a witness. Appellant by so doing sought to avoid the requirement of the Rule that "he is unable to prove such facts by any other witness whose testimony can be as readily procured." Also, no assurances were given the court that the grant of continuance would result in the presence of Tyree McIntyre at trial, Rule 25.08 and *State v. Nunley,* 482 S.W.2d 503, 504 (Mo.1972); and nothing indicates defense counsel made an effort to obtain a subpoena for Herbert or Tyree McIntyre at any earlier time. However, the principal share of fault in this situation seems to lie with appellant, who was a difficult client to represent and had not discussed the case with defense counsel for approximately two months prior to trial. Finally, it is important that Tyree or Herbert McIntyre's testimony would be cumulative in nature and it is not probable a different result would obtain had the prospective witness testified. *State v. Scott,* 338 S.W.2d 873 (Mo.1960); *State v. Reece,* 505 S.W.2d 50 (Mo.1974). We find there was no abuse of discretion in the court's refusal to grant appellant's unsworn motion for continuance.

■ After appellant testified and before the State's rebuttal evidence, appellant moved orally for continuance to procure the presence and testimony of an absent witness, one Sergeant Gregory Sullivan. The evidence shows that immediately prior to the motion for continuance a subpoena duces tecum had been served by a member of the public defender's staff upon Sergeant Sullivan. The subpoena directed Sullivan to bring the arrest records of appellant to corroborate his statements he had no money in his possession when booked. The court properly refused the application as it patently failed to meet the requirements of

Rule 25.08 and there was no showing of prejudice by the court's ruling since Sergeant Sullivan testified shortly thereafter and the desired testimony was elicited.

■ Appellant next alleges error in the giving of an instruction based on MAI–CR 2.10. At trial, a general objection only was made to the instructions and the sole allegation of error in the motion for new trial was: "The court erred in failing to properly and adequately instruct the jury as to all questions of law applicable to the case." This fails to raise the issue with sufficient particularity as required by Rules 27.20(a) and 20.03, V.A.M.R. Where a specific objection is not made to an instruction at trial or in the motion for new trial, the point is not preserved for review. *State v. Mitchell,* 500 S.W.2d 320, 323[7] (Mo.App.1973); *State v. Gray,* 525 S.W.2d 367, 370[6] (Mo. App.1975).

■ Appellant next contends that the trial court erred in refusing his offered instruction # A (MAI–CR 3.54) directing the jury to consider prior statements made by defendant in determining the truthfulness of his testimony at trial. We hold against appellant on this contention as none of his prior statements are truly "consistent" with his testimony at trial, an indispensible prerequisite for giving the instruction. MAI–CR 3.54, Notes on Use. Appellant's brief directs our attention to the testimony of officer Moore stating: "Officer Moore testified that defendant had told him that Richard Klaus had forced him inside the building and had taken his money." An examination of the record indicates that this statement is only partially accurate; the relevant portion of Moore's testimony is as follows:

"Q. [By Prosecutor Heidenry] Did he [Wade] make a statement to you, after you advised him of his rights?

A. He referred to security guard Klaus, and said he had taken $150.00 from him.

Q. Did he say $150.00?

A. Yes, he did.

Q. You remember that clearly, at that time?

A. Yes, sir.

Q. Did he make any other statement, at any time you had him in custody, after you advised him of his rights?

A. After I advised him of his rights, he said all he wanted was the $150.00 that the security guard had taken from him.

Q. Did you ask him anything?

A. I remember asking him if he had broken into the store there, and he referred to the habit he had, a narcotic habit.

Q. I want you to tell me what you asked him exactly, and what his response was?

A. I asked him if he broke into the place and I said, 'You know, the security guard said he caught you inside. Did you break out the panel?' And he said, 'I have to support my habit in some way.'

\* \* \* \* \* \*

Q. [By Defense Attorney Knutson] Do you recall any statement by Mr. Wade that he was arrested by security guard Klaus in front of the Transport Company?

A. Not to me he didn't.

Q. Did you hear him make such a statement?

A. No, I did not.

Q. Did you hear him at any point?

A. I heard other people mentioning it, but nothing was said to me about it."

At no point did Moore testify appellant told him he had been forced into the building; in fact, appellant's reply concerning his drug habit seems to impel the opposite conclusion. Further, while Moore testified appellant complained Klaus had taken money from him, appellant's statement contradicts his subsequent testimony as to the amount of money and other items taken.

 Appellant next complains that a statement made by the prosecutor in closing argument attributed to appellant a crime for which he was not charged (i. e., first degree burglary) and charges error in the court's refusal of an instruction to disregard or for mistrial. The prosecutor's offending statement follows:

"MR. HEIDENRY (continuing) Ladies and gentlemen: If on this evidence, you find this man not guilty, the next time you read something in the paper, don't scoff. These burglars break into homes or apartments where women are home alone, the likes of him—"

We believe the remedial action called for by appellant was properly refused. "The prosecution attorney is generally permitted considerable latitude in arguing the necessity of law enforcement and the responsibility resting on trial juries." *State v. King,* 334 S.W.2d 34, 40[10] (Mo.1960); *State v. Pruitt,* 479 S.W.2d 785, 790[9] (Mo. banc 1972). Unlike the attorney in *State v. Heinrich,* 492 S.W.2d 109 (Mo.App.1973), the prosecutor here did not characterize appellant himself as a threat to the jurors and their families; he referred to burglars plurally, contending that the threat came from "the likes of" appellant. This type of argument does not unfairly personalize appellant in the eyes of the jury and has long been permitted by Missouri courts, *State v. Heinrich, supra* at 114[9]; *State v. Crawford,* 478 S.W.2d 314, 320[14] (Mo.1972) app. dis. 409 U.S. 811, 93 S.Ct. 176, 34 L.Ed.2d 66 (1972); *State v. McKinney,* 475 S.W.2d 51, 55[5] (Mo.1971), and does not suggest appellant was charged or on trial for first degree burglary.

Appellant's final point, numbered eleven charging bias of the trial court, was not raised in appellant's motion for new trial and thus not properly before us on this appeal. See Rule 27.20(a) and *State v. Henderson,* 510 S.W.2d 813 (Mo.App.1974). We have reviewed the point for plain error under Rule 27.20(c), V.A.M.R., and find none.

The judgment is affirmed.

WEIER, P. J., and DOWD, J., concur.