STATE of Missouri, Respondent,

v.

David G. FRANKLIN, Appellant.

No. 15636.

Missouri Court of Appeals, Southern District, Division One.

Nov. 30, 1988.

Harry Rupert Stafford, Jr., Hartville, for appellant.

No appearance for respondent.

CROW, Presiding Judge.

David G. Franklin ("appellant"), tried without a jury, was found guilty by the trial court of "hunting deer without a permit," § 252.040, RSMo 1986, and 3 CSR 10–7.435. The trial court sentenced appellant to pay a fine of $100 plus court costs, and also entered judgment against appellant for $36 in favor of the State of Missouri per § 595.045, RSMo 1986.[1] Appellant brings this appeal presenting two assignments of error. The first avers the trial court erred in receiving testimony of three conservation agents "regarding statements made by appellant following an illegal arrest and which were obtained in violation of the Fourth Amendment." The second alleges the trial court erred in receiving testimony of the same witnesses "regarding statements made by appellant while under custodial arrest and in violation of the Fifth Amendment privilege against self-incrimination." As explained *infra* we find no merit in either point.

As appellant does not challenge the sufficiency of the evidence to support the finding of guilty we summarize only the evidence necessary to dispose of the allegations of error.

The prosecution's first witness was John Balkenbush, a conservation agent. Balkenbush testified he was on "routine patrol" on a county road in Dallas County November 22, 1987, the last day of deer season. About 1:30 p.m., Balkenbush saw a "Chevy Blazer" driving "on what appeared to be a private lane in a large bottom area" some 300 to 400 yards from Balkenbush. Balkenbush drove to the intersection of the county road and the lane. The Blazer, which was still on the lane, "pulled off in the weeds" and stopped. Balkenbush then drove "alongside" the Blazer, observing that it was being driven by appellant and that he was accompanied by a female passenger, Christy McDaniel. Balkenbush asked the duo "if they'd had any luck." Appellant, according to Balkenbush, replied no, that they had not been deer hunting.

Balkenbush observed an article of "hunter's orange" clothing—apparently a vest—in the backseat of the Blazer. On the

1. Section 595.045, RSMo 1986, establishes the "Crime Victims' Compensation Fund."

Blazer's "front dash" Balkenbush saw an empty red plastic container normally used to hold high-powered rifle shells. Balkenbush asked appellant whether he had a hunting permit. Appellant replied, "No, we haven't been deer hunting." Balkenbush then asked appellant for his driver's license. Appellant informed Balkenbush he did not have one. Balkenbush then asked appellant his name and date of birth "so I could check him."

Balkenbush learned by radio that there were no "outstanding warrants" for appellant, but also learned appellant "was not supposed to have any firearms." Balkenbush thereupon asked appellant to step out of the Blazer. Appellant, according to Balkenbush, said, "You're welcome to look." Balkenbush had appellant move the seat forward so he (Balkenbush) "could look in the back." Balkenbush also asked appellant to open the center console, which he did. Balkenbush observed rifle shells in the console. Appellant, at Balkenbush's direction, also opened the glove box. Balkenbush saw nothing there. At that point Balkenbush said, "You're not in any violation as far as we're concerned." Appellant and Ms. McDaniel then departed in the Blazer, Ms. McDaniel driving.

Balkenbush returned to his vehicle and "thought about it for a second." He then walked down the lane about fifty yards in the direction whence the Blazer had come. In weeds "just outside of the outside wheel rut" Balkenbush found two high-powered Remington rifles, both of which were "scoped." One, said Balkenbush, "had the inscription, 'Wild Man, David Franklin,' and his Social Security number inscribed in the metal on it."

Balkenbush radioed conservation agent Jim Goers, informing him that he (Balkenbush) needed to recontact appellant and Ms. McDaniel as a result of finding the firearms. Darrell Walden, a "regional staff specialist with the Conservation Department," was also in the area and he agreed to assist.

Walden spotted the Blazer "within a short time" and stopped it. Ms. McDaniel was driving; appellant occupied the passenger seat. Balkenbush and Goers arrived a few seconds later. They approached the "driver's window" and talked with Ms. McDaniel. Walden walked to the "passenger side" of the Blazer.

At this point in his testimony Balkenbush was asked whether he discussed with appellant "the situation concerning the guns" Balkenbush had discovered. Balkenbush responded, "Later on when we went back to the police department, yes, I discussed it." Then, this:

"Q. Okay. You heard Mr. Franklin discuss the guns; is that what you're saying?

A. Yeah. He didn't deny that—You know, he said, as I recall, it was just basically that, yeah, I guess you guys found the guns. You know, it wasn't—

Q. All right.

A. —any surprise.

Q. Did you have a conversation with him?

MR. STAFFORD:[2] Your Honor, we're going to object to this and ask that this—and ask that this testimony be stricken unless they can show that Mr. Franklin was advised of his rights. Any admissions or alleged admissions that he made are inadmissible.

THE COURT: Well, let's go through the custodial bit as to whether he was in custody or what we were doing.

BY MR. RIESCHEL:[3]

Q. Was Mr. Franklin advised of his Miranda warnings?

A. As I understand it, yes. That was done by Agent Walden.

Q. At what point?

A. As far as I'm aware immediately after they made contact. When they stopped, Mr. Franklin got out of the vehicle and came back. He and Agent Wal-

---

2. Appellant's lawyer.

3. Prosecuting Attorney of Dallas County.

den talked. And I'm almost sure that that was right when it was administered. Agent Walden can tell you exactly when.

Q. Okay.

MR. RIESCHEL: At this point, Your Honor, we can either take his testimony subject to a motion to suppress and allow him to reserve that in hopes that we'll tie it together with the later agent, or I can call him at this time to put on evidence that he was advised of his rights.

MR. STAFFORD: Your Honor, he can go ahead and testify subject to my objection.

THE COURT: Very well. Thank you.

MR. STAFFORD: No need to run him in and out of here two or three times."

Balkenbush thereafter testified that at the "police department" appellant made the comment "that he couldn't resist the last day of hunting season hunting, and he apologized to me for throwing the guns out, but said that due to the terms of his probation, I believe it was, he said that he couldn't tell me at the time that we first met in the field." Balkenbush also recounted that the agents had asked Ms. McDaniel and appellant how they would have tagged a deer legally had they succeeded in killing one. Appellant, according to Balkenbush, replied he did not know.

The prosecutor called Walden as the State's second witness. Walden explained he read the "Miranda warnings" [4] to appellant in Walden's vehicle at the scene where appellant was stopped. Then, this:

"Q. All right. And did you have a conversation with Mr. Franklin subsequent to the reading of those Miranda warnings?

A. Subsequent to, yes.

Q. Yes. And what, if anything, did he say to you concerning either hunting or rifles?

A. First thing that Mr. Franklin stated was that, after I told him we had found his guns, he said, 'I figured you did.' Subsequent conversation led to Mr. Franklin stating that it was the last day of deer season, that he couldn't resist attempting to take a deer, that he hadn't hunted all year. Other statements he made were that he figured his hunting rights would be reinstated the following day, but that he just couldn't wait. This was the last day of deer season."

A question to Walden on cross-examination produced the following answer:

"After I stopped the vehicle, I walked up to the passenger side where David was seated and told him that we had found his guns. Like I say, he said, 'I figured you did.' I asked him to get out of the vehicle, and he did. He came back to my vehicle and sat down. At that time I read him the warning from a card and began talking."

Appellant registered no objection on any ground to any of Walden's testimony.

Goers was the final prosecution witness. In his direct examination we find this:

"Q. ... What, if anything, did [appellant] say ... either at the scene out there where he was stopped, or after you left that scene?

A. To the best of my recollection, one statement I remember that he made was, 'I guess you caught me.' Something to the effect that I guess I might as well tell the truth; you caught me. Another statement, 'I'm just kind of a country boy and I had to get out the last day of the season and hunt.' Something to that effect."

Appellant voiced no objection throughout Goers' testimony.

After the prosecutor had rested the State's case appellant's lawyer stated:

"Your Honor, at this time I'd like to renew my objection to the testimony of the Officer Balkenbush and also the other officer. I think that, clearly, any evi-

**4.** Presumably the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

dence which was obtained was improperly obtained. First of all, Officer Balkenbush conducted an illegal search, because he had no probable cause to believe that a crime occurred. This hunter orange and this bullet container certainly did not constitute probable cause to believe that a crime had been committed. So, his search then led him to find some kind of high-powered ammunition. Then he called the—He asked for a license check, for which he had no authority, and for which he could have done nothing. It had to have been a warrant out. At which time he obtained additional information. So, everything that he did there was either illegal or without authority, and had he not done those things, he would never have had enough information to proceed with this.

Then Agent Walden, when he came to the car, the Blazer, there was no doubt in his mind that he was stopping this man, that he was arresting him; and that at that point he should have advised him of his rights, and he said, 'We have your guns.' That was an obvious invitation to make a statement, which was improperly obtained unless that information was coming out. The fact that he later gave him the Miranda really didn't help anything. He used the old Supreme Court term, 'It was all fruits of the poisonous tree.' And I think all the evidence that was obtained here was fruits of the poisonous tree, and it was an illegal arrest, and an improper obtaining of statements because he was not properly advised of his rights.

So, we'd ask the Court to throw out or suppress all this evidence which came in here today and to discharge the Defendant for lack of evidence."

The trial court denied the request.

Appellant's first point asserts that when Walden stopped appellant's Blazer appellant "was the focus of the investigation but there was no probable cause to believe he had committed a crime." Consequently, says appellant, his statements to the con-

servation agents resulted from exploitation of an illegal arrest.

■ In order to preserve for appellate review an objection to the admission of testimony the objection stating the grounds must be made at the time the evidence is sought to be introduced. *State v. Hernandez*, 325 S.W.2d 494, 496[3] (Mo.1959). Assignments of error regarding admissibility of evidence are not for consideration on appeal unless timely presented to the trial court when the evidence is offered. *State v. Helm*, 624 S.W.2d 513, 516[7] (Mo.App. 1981); *State v. McMillin*, 581 S.W.2d 612, 615–16[5] (Mo.App.1979).

■ Here, appellant's only objection to the testimony regarding his incriminatory statements came during the testimony of agent Balkenbush, the prosecution's first witness. That objection, as we have seen, was that any testimony regarding appellant's incriminatory statements was inadmissible unless the prosecutor could show that appellant "was advised of his rights." It was not until after the prosecutor had rested his case that appellant's lawyer voiced any contention that the agents had no probable cause to believe a crime had occurred, or that the arrest of appellant was "illegal." Having waited until that stage of the trial to state the grounds for the objection on which he now seeks to base his first point on appeal, appellant failed to preserve the point for appellate review. *State v. Franco*, 544 S.W.2d 533, 537[7] (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Hernandez*, 325 S.W.2d 494, 496[3] (Mo.1959).

■ However, even if the point had been preserved it would not compel reversal. Assuming, *without deciding*, that no probable cause existed for appellant's arrest at the time Walden stopped the Blazer, we decline to hold appellant's incriminatory statements inadmissible. The Supreme Court of Missouri explained in *State v. Reynolds*, 619 S.W.2d 741, 746–47 (Mo. 1981):

"In *Brown v. Illinois*, [422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)], the Supreme Court identified several factors to be considered in determining whether a confession was obtained by exploitation of an illegal arrest. It was stated that 'In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun [*Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] required not merely that the statement meet the Fifth Amendment standard of voluntariness ... but that it be "sufficiently an act of free will to purge the primary taint." ' Continuing the court stated that 'It is entirely possible, of course, * * * that person arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality,' but it added that the *Miranda* warnings, alone and per se, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession. The court refused to adopt a per se or 'but for' rule, but stated that the question of whether the confession is the product of a free will must be answered on the facts of each case, and that no single fact is dispositive. The court then stated: 'The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, * * * and, particularly, the purpose and flagrancy of the official misconduct are all relevant.' "

In the instant case there was no flagrant misconduct by any of the conservation agents. Indeed, when Balkenbush first confronted appellant and determined there was no basis for an arrest, Balkenbush told appellant and Ms. McDaniel they were not in any violation and allowed them to depart. It was only after Balkenbush discovered the two rifles—one inscribed with appellant's name and Social Security number—that Balkenbush decided appellant should be stopped again, and it was only after appellant acknowledged to Walden that he (appellant) "figured" the agents had found the guns that Walden asked appellant to get out of the Blazer and go to Walden's vehicle. There Walden immediately gave appellant the *"Miranda"* warnings."

On this evidence it would defy logic to conclude there was any causal connection between the assumed illegal arrest and appellant's incriminatory statements. Rather, it is evident that appellant's incriminatory statements resulted from his realization that the agents had found the abandoned rifles and had deduced that appellant's earlier disavowal of deer hunting was untrue. Moreover, appellant presented no evidence in the trial court that his incriminatory statements were the product of the alleged illegal arrest. Appellant's first point is denied.

Appellant's second point reads:

"The court erroneously admitted testimony of three (3) conservation agents regarding statements made by appellant while under custodial arrest and in violation of the Fifth Amendment privilege against self-incrimination."

The import of the point, as we divine it from the argument portion of appellant's brief, is that inasmuch as appellant's first incriminatory statement to Walden, i.e., that appellant "figured" the agents had found the guns, was made after Walden had stopped appellant but before Walden gave appellant the "Miranda warnings," such statement, together with all incriminatory statements made by appellant after the "Miranda warnings," was inadmissible.

■ The first flaw in appellant's second point is that all of Walden's testimony regarding appellant's incriminatory statements was received without objection, as was all of Goers' testimony regarding appellant's incriminatory statements. The

only objection voiced by appellant to any testimony about his incriminatory statements came during the testimony of Balkenbush, the prosecution's first witness.

Even if appellant's objection during Balkenbush's testimony was sufficient to constitute a motion to suppress appellant's incriminatory statements on *"Miranda"* grounds—an issue we need not decide—appellant failed to preserve the point for appellate review by allowing Walden and Goers to testify about appellant's incriminatory statements without objection. *State v. Gardner,* 741 S.W.2d 1, 3[1] (Mo. banc 1987), *cert. denied,* — U.S. —, 108 S.Ct. 2001, 100 L.Ed.2d 232 (1988); *State v. Garrette,* 699 S.W.2d 468, 497[21] (Mo.App. 1985).

■ Nothing in the transcript suggests that appellant's objection during Balkenbush's testimony was intended to constitute an objection to the testimony of any witness other than Balkenbush. On the contrary, the segment of Balkenbush's testimony quoted earlier demonstrates that the understanding between the trial court and counsel was that Balkenbush would be allowed to testify as to appellant's incriminatory statements, subject to appellant's request that Balkenbush's testimony on that subject be stricken later unless there was a showing that appellant was advised of his rights. As appellant remained mute while Walden and Goers testified regarding his incriminatory statements, appellant's second point is ineligible for appellate review, at least insofar as the testimony of those two witnesses is concerned. *State v. Sisler,* 654 S.W.2d 220, 221[2] (Mo.App. 1983); *State v. Wade,* 535 S.W.2d 492, 495 (Mo.App.1976). That being so, it is immaterial whether appellant's second point has been preserved for review in regard to Balkenbush's testimony, as there is no prejudice and hence no reversible error if evidence is improperly admitted but other evidence before the court establishes essentially the same facts. *State v. Zagorski,* 632 S.W.2d 475, 478 n. 2 (Mo. banc 1982); *State v. Corona,* 685 S.W.2d 931, 938[5] (Mo.App.1985). Here the testimony of Walden and Goers established that appellant made essentially the same statements as were recounted by Balkenbush. Consequently, whether appellant's second point was preserved for review as to the testimony of Balkenbush is of no moment.

■ However, even if appellant's second point were preserved as to Balkenbush's testimony it would be void of merit. In *State v. Wright,* 515 S.W.2d 421 (Mo. banc 1974), the accused was arrested for a homicide committed during a robbery and was taken to police headquarters where an officer was interrogating another suspect, one Leroy. Without giving the accused any advice regarding constitutional rights the officer asked the accused what he did with the shotgun. The accused replied: "Leroy, you know I gave you the shotgun. I don't know where it is at." The officer then advised the accused to make no further statements, and the accused was not interrogated further that day. The next day the accused was interrogated after first being advised as required by *Miranda v. Arizona.*[5] He confessed participation in the planning and the commission of the robbery. Prior to trial the accused moved to suppress both the statement made at police headquarters the day of his arrest and the confession made the following day. The trial court ruled that the initial statement was not admissible because the accused had not been given his *Miranda* warning, but that the confession given the following day was admissible. *Id.* at 423–24.

Affirming the accused's conviction of murder in the first degree, the Supreme Court of Missouri observed that when there are multiple confessions, statements given after appropriate warnings are not necessarily rendered inadmissible by a lack of proper warning before earlier in-custody statements and that the factual situation in

---

**5.** Footnote 4, *supra.*

each particular case must be examined in order to determine whether earlier unconstitutional conduct makes inadmissible the subsequent statement after proper warning. *Id.* at 426. The Supreme Court then concluded that the evidence did not indicate that the accused's confession the day after his arrest was coerced by the question and answer the day of arrest. *Id.* at 427. Additionally, the Supreme Court pointed out that the accused's initial statement about the shotgun was not a confession, as the accused did not say he was at the scene of the robbery or that he had participated in either the planning or execution thereof, nor did he identify any particular shotgun or indicate when or where he had given it to Leroy. *Id.* Consequently, explained the Supreme Court, the accused's statement about the shotgun would not have been enough to make a submissible case against him. *Id.* Therefore, said the Court, the accused did not by that statement "confess or let the cat out of the bag." *Id.* Thus he was not entitled to have his confession the following day excluded. *Id.*

Similar circumstances exist here. When Walden, upon stopping the Blazer, informed appellant that the agents had found appellant's guns, appellant said, "I figured you did." That statement was not an admission that appellant had been deer hunting and would not, alone, have made a submissible case. It was only after Walden gave appellant the *"Miranda* warnings" that appellant confessed he had been deer hunting. That admission was obviously prompted by appellant's knowledge that the guns—one of which bore his name and Social Security number—had been found, not by his statement, "I figured you did."

Accordingly, even if we assume that appellant was in custody at the instant Walden stopped the Blazer, and if we further assume that Walden's statement to appellant that the agents had found appellant's guns amounted to an interrogation—we do not imply either assumption is correct—appellant's statement, "I figured you did," did not, under the rationale of *Wright,* render inadmissible appellant's admissions, after being given the "Miranda warnings" by Walden, that appellant had been deer hunting.

Judgment affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.