The appellant, Joseph Devern Winters, was convicted of attempted murder, a violation of §§ 13A-4-2 and 13A-6-2, Code of Alabama 1975. He was sentenced to 35 years in the penitentiary.
The state's evidence tended to show that at midnight on November 2, 1991, Lt. John Faile of the Tuscaloosa Police Department began his shift on patrol. At about 12:55 a.m., Faile received a report of a disturbance. In response, Faile proceeded to the location of the disturbance. He testified that when he drove up he saw a crowd of people and several cars in front of a house. He also testified that the crowd was very noisy. He stopped his patrol car about four car lengths from the crowd. Faile testified that just before he got out of the car, he heard a "pop" to his left. He further testified that as he was getting out of the car he heard another "pop" and saw a "muzzle flash" from a gun. He then saw the appellant, who was standing with a pistol: pointed directly at Faile. Faile immediately drew his own weapon and pointed it at the appellant. At the same time *Page 788 
Faile and other officers ordered the appellant to drop the gun. The appellant continued to point the gun at Faile so Faile fired one extremely accurate shot, striking the appellant's right hand and causing him to drop the pistol. The appellant ran a short distance and then fell down in his yard.
Sergeant J.W. Rudowski's testimony corroborated that of Faile in that he said that he saw the appellant fire a shot at Faile.
The appellant produced several witnesses to contradict the officers' testimony. Rachell McGraw testified on the appellant's behalf. She testified that she had a birthday party for the appellant at her house, which was two houses from the appellant's. She said that on the night of the party there were more than 100 people at her house, both inside the house and outside in the yard. She said that several fights had broken out at the party. McGraw testified that the crowd began moving toward the appellant's house. She further testified that the appellant was attempting to break up the crowd and push them away from his house. After several unsuccessful attempts to do so, the appellant obtained a pistol and fired two or three shots to break up the crowd. McGraw testified that the appellant fired the shots into the air and never aimed the pistol at anyone.
Ken Quarles also testified for the appellant. His testimony was substantially the same as McGraw's regarding the party and the sequence of events that night. Like McGraw, Quarles testified that the appellant fired two shots into the air and never aimed the pistol at anyone.
Barry Knox testified to substantially the same facts as McGraw and Quarles. He also testified that the appellant fired two shots into the air and did not aim the pistol at anyone.
The appellant presents four issues on appeal.
 I
The appellant first contends that the verdict was contrary to the law and the evidence. More specifically, he contends that there was not sufficient evidence presented to prove that he had the specific intent to murder Lt. Faile.
 "In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253 (Ala.Cr.App. 1991); Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979)."
Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App. 1993).
The trial court instructed the jury that "intent to commit murder may be presumed by the defendant's act of using a deadly weapon." However, the appellant contends that the state did not present sufficient evidence to prove that he aimed and fired the pistol at Lt. Faile. He argues that the jury should not have relied on the above presumption because, he says, he merely possessed the pistol, but did not use it against Faile.
Lt. Faile and Sergeant Rudowski testified that the appellant aimed and fired the gun at Faile. The appellant presented testimony that conflicted with the officers' testimony.
 "Any inconsistencies and conflicts in the evidence were for the jury to resolve. This court is not a finder of fact and wilL not second-guess juries in their conclusions as to the facts of a case. ' "[V]erdicts rendered [on conflicting evidence] are conclusive on appeal." Johnson v. State, 555 So.2d 818, 820 (Ala.Cr.App. 1989).' Dailey v. State, 604 So.2d 436 (Ala.Cr.App. 1992). See also Woods v. State, 592 So.2d 631
(Ala.Cr.App.), writ quashed, 592 So.2d 636 (Ala. 1991)."
O'Barr v. State, 639 So.2d 533, 536 (Ala.Cr.App. 1993). The state presented sufficient evidence for the jury to find the appellant guilty of attempted murder. "Where there is legal evidence from which the fact finder may, by fair inference, find the accused guilty, this court will not overturn the verdict." McDonald *Page 789 v. State, 586 So.2d 259, 261 (Ala.Cr.App. 1991). We will not substitute our judgment for that of the jury. Owens v. State,597 So.2d 734, 737 (Ala.Cr.App. 1992).
 II
The appellant next contends that his counsel's performance was ineffective. To prevail on a claim of ineffective assistance of counsel, the appellant must show (1) that his counsel's performance was deficient, and (2) that he was prejudiced as a result of the deficient performance.Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984); Cox v. State, 660 So.2d 233, 234
(Ala.Cr.App. 1994). This issue was preserved by the appellant's motion for a new trial.
The appellant first contends that his counsel's performance was deficient because he failed to object to the trial court's jury instruction that intent can be presumed from the use of a deadly weapon. "[T]his court has recognized that defense counsel's failure either to request or object to jury instructions, even if that failure is determined to be error, will not always constitute reversible error." Russo v. State,630 So.2d 142, 144 (Ala.Cr.App. 1993). However, in this case the court's instruction was a correct statement of the law. The failure of counsel to object to a jury charge that is correct cannot be considered deficient performance or prejudicial to the defendant. Bates v. State, 549 So.2d 601, 611 (Ala.Cr.App. 1989); Martin v. State, 548 So.2d 488, 493 (Ala.Cr.App. 1988), aff'd, 548 So.2d 496 (Ala.), cert. denied, 493 U.S. 970,110 S.Ct. 419, 107 L.Ed.2d 383 (1989).
The appellant next contends that his counsel's performance was deficient because he did not introduce into evidence a police diagram that showed a bullet hole located in the opposite direction from where Lt. Faile was standing. Here again, whether to introduce particular demonstrative evidence is a decision within the broad realm of trial strategy. We were not present and cannot sense the feelings and mood of the jury. In addition to any subjective reasoning, in this instance defense counsel had an objective reason for not introducing the diagram. At the appellant's hearing on his motion for a new trial, trial counsel testified that he did not attempt to introduce the diagram because it was inconsistent with the appellant's defense theory. At trial, the appellant's defense was that he only fired the pistol "into the air," not that he fired it in a direction opposite from Lt. Faile. "This decision was a decision of strategy, and we cannot in hindsight, second-guess such decisions by trial counsel." Williams v. State, 641 So.2d 1305, 1308 (Ala.Cr.App. 1994).
The appellant last contends that his counsel's performance was deficient because he did not file a civil action against the City of Tuscaloosa for the conduct of Lt. Faile in shooting the appellant. We hold that it is never ineffective assistance of counsel for defense counsel in a criminal case to refrain from filing a civil suit against law enforcement officers or the governmental entity those officers serve.
The appellant has not proven his trial counsel's assistance to be ineffective under the standards articulated inStrickland.
 III
The appellant next contends that the trial court erred by allowing a videotape of the crime scene to be shown to the jury and received into evidence because, he contends, the tape did not accurately depict the lighting conditions at the time of the crime.
" '[A]s long as satisfactory evidence of the integrity of afilm or videotape is presented, stringent foundational requirements, such as proof of a continuous chain of custody, are now almost universally rejected as unnecessary.' " Gordonv. State, 552 So.2d 901, 905 (Ala.Cr.App. 1989), quoting Molinav. State, 533 So.2d 701, 711 (Ala.Cr.App. 1988) (emphasis added in Gordon). Here, Lt. Faile testified that the videotape fairly and accurately depicted the crime scene as he saw it that evening. Under questioning by the appellant's counsel, Faile acknowledged that the video camera had a light that helped to illuminate the scene being videoed. Therefore, obviously, the camera provided a clearer depiction of the night scene than did the descriptions by some of *Page 790 
the witnesses who were participants. The trial court then gave the following limiting instruction:
 "THE COURT: I will overrule but state to the jury that in viewing this tape, as has already been expressed to you, you are to understand that this does not totally reproduce or replicate the lighting or environment as it existed on the night in question inasmuch as it is being acknowledged there is artificial lighting or illumination used in connection with this. This tape will be allowed to be seen by you and will be admitted for the limited purpose of showing the relative positions of the geography and structures there but not in any way try to show to you what a particular witness might have seen unaided by a light on that occasion."
We hold that the trial court's limiting instruction was more than sufficient to cure any misunderstanding the jurors might have otherwise had concerning the ability of the witnesses to see in the dark as well as the camera equipped with a light.
 IV
The appellant last contends that the trial court erred in denying his Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), motion.
The record reflects that there were six blacks on the venire. The state exercised four of its peremptory challenges to remove blacks from the venire. The trial court found a prima facie case of discrimination and ordered the state's counsel to give reasons for the strikes.
Counsel stated that he struck prospective juror number 33 because she lived near the appellant and was very familiar with the area where the crime occurred. Also, she had been close friends in high school with Wendy Freeman, who was the appellant's girlfriend and a potential witness in the case. Furthermore, Freeman was linked with the appellant in a pending unrelated drug prosecution. The Alabama Supreme Court has held that the fact that a veniremember lived near the defendant is a race-neutral reason under Batson. Ex parte Lynn,543 So.2d 709 (Ala. 1988), cert. denied, 493 U.S. 945,110 S.Ct. 351, 107 L.Ed.2d 338 (1989); Avery v. State,545 So.2d 123 (Ala.Cr.App. 1988). Moreover, "[s]trikes based on the veniremember's relationship with the defendant or with the defendant's witnesses have generally been upheld." Rowe v.State, 625 So.2d 1210, 1211 (Ala.Cr.App. 1993).
The state also struck prospective juror number 81 because he lived three blocks from the appellant and was very familiar with the area where the crime occurred. As stated above, this has been held to be a race-neutral reason underBatson. Also, he told the court that his son had been denied a job with the Tuscaloosa Police Department because of some false accusations. He stated that he felt animosity toward the police department and that he preferred not to be a juror in the case. This court has held that dissatisfaction with law enforcement is a race-neutral reason under Batson for removing a prospective juror. Powell v. State, 548 So.2d 590 (Ala.Cr.App. 1988), aff'd, 548 So.2d 605 (Ala. 1989). Furthermore, prospective juror 81 had a nephew who had been prosecuted for a drug offense. This court has repeatedly held that prosecution of a relative is a race-neutral reason under Batson. Carey v.State, 560 So.2d 1103 (Ala.Cr.App. 1989).
State's counsel stated that he struck prospective juror number 68 because his cousin had been prosecuted for an undisclosed criminal offense. As stated above, this court has held this to be a race-neutral reason under Batson.
The state struck prospective juror number 78 because he also knew Wendy Freeman. This is also a race-neutral reason underBatson. See our discussion of the strike of prospective juror number 33.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 791