**STATE of Missouri, Respondent,**

v.

**Lionel WILLIAMS, Appellant.**

**No. WD 53086.**

Missouri Court of Appeals, Western District.

Dec. 9, 1997.

was sustained by the court.

---

**3.** Following the trial court's order, the State filed a Motion to Retain Property Pending Appeal that

Andrew A. Schroeder, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, C.J., P.J., and SMART and ELLIS, JJ.

ULRICH, Chief Judge, Presiding Judge.

Lionel Williams appeals his conviction for second degree burglary, section 569.170 [1], and sentence to twelve years imprisonment. He claims that the trial court erred in 1) admitting the testimony of a police officer regarding a shoe print he observed at the crime scene; 2) overruling his *Batson* challenge to the State's removal of a venireperson; and 3) failing to suppress his statement to police. The judgement of conviction is affirmed, and the case is remanded to the trial court with directions.

## FACTS

Gerald Cox, a Kansas City Missouri Police Officer, was on patrol in the early morning hours of September 29, 1995, when he was directed to investigate an alarm at the Family Dollar Store located at 7133 Prospect.

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

Upon arriving at the scene, he turned off his headlights and parked the car he was driving on the street to wait for assistance. As Officer Cox sat in his patrol car, he heard a second alarm activate and decided to examine the building.

When Officer Cox approached the building, he noticed that the rear door of the store was open and that a man was quickly walking away from it. He stopped, frisked, and arrested the man, who was later identified as the appellant, Lionel Williams. He then radioed for a K–Nine Unit, a "paddy wagon," and an additional officer.

After the K–Nine Unit arrived, the inside of the building was searched for additional suspects. No one was found in the store. Police observed a hole in the ceiling of the store with pieces of roofing and insulation laying on the floor beneath the hole. A subsequent investigation of the roof revealed that a vent on the roof had been pried open making a hole. A shoe print was also discovered in tar near the hole. Officer Cox then examined Mr. Williams's sandals and determined that their soles looked "very similar" to the shoe print found in the tar on the roof. He also noticed debris on Mr. Williams's clothing that appeared similar to the insulation found on the floor of the store.

The manager of the store was called to the scene and discovered that stereos and electronic equipment were missing. She reviewed a videotape made by the store's surveillance camera and observed two men stealing the stereos. The quality of the tape was very poor, however, and she could not identify the thieves. She also observed Mr. Williams and recognized him as a patron of the store. She noticed bits of insulation on his clothing.

Mr. Williams was questioned by Officer Amelia Hull later that afternoon at the police station after receiving the *Miranda* warning and waiving his rights. He denied any involvement in the burglary. He told Officer Hull that he was walking past the store when he saw two men throwing boxes over a fence located nearby. He recognized one of the men as "Eddie." He heard the alarm sounding, saw the rear door of the store open, and could not resist entering the store and stealing something because he needed the money. Mr. Williams stated that he entered the store, removed two boxes of cookies, and was arrested before he could return to the store. He was adamant that he did not plan the burglary and that he was not acting in concert with "Eddie." He also denied having insulation on his clothing at the time of his arrest.

Mr. Williams was subsequently charged by amended information with one count of second degree burglary and one count of felony stealing. Prior to trial, he filed a motion to suppress any oral or written statements made by him to any police officer on the day of his arrest. He asserted the statements were coerced and were made prior to his receiving the appropriate warnings. The statements Mr. Williams made to Officer Cox were suppressed. The statements Mr. Williams made to Officer Hull were not suppressed.

Following jury trial, Mr. Williams was convicted of second degree burglary and sentenced to twelve years imprisonment. This appeal followed.

## I. SHOE PRINT EVIDENCE

■ In his first point on appeal, Mr. Williams claims that the trial court erred in admitting the testimony of Officer Cox regarding the shoe print he observed in the tar on the roof and its similarity to the soles of Mr. Williams's sandals. He argues that the State violated Rule 25.03 by not disclosing that Officer Cox would testify about the shoe print. He contends that as a result of this nondisclosure, he was unable to prepare for effective cross-examination of Officer Cox.

Prior to trial, Mr. Williams requested the names and addresses of the State's witnesses, their written or recorded statements or existing memoranda reporting or summarizing their oral statements, and any reports or statements of experts. In response, the

State notified Mr. Williams of its intent to call Officer Cox to testify and provided Mr. Williams's attorney with the officer's police report. The police report did not contain a reference to the shoe print discovered on the roof of the store or to the similarities detected by the officer between the shoe print and the soles of Mr. Williams's sandals.

 Rule 25.03 provides, in pertinent part:

(A) Except as otherwise provided in these Rules as to protective orders, the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

(1) The names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements;

\* \* \* \* \* \*

(5) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons.

This Rule and Rule 25.12, which allows the defense to depose potential witnesses, are designed to prevent surprises at trial. *State v. Enke,* 891 S.W.2d 134, 137 (Mo.App. 1994). While Rule 25.03 requires the State to disclose the names and addresses of its witnesses, it does not require the State to categorize anticipated witnesses and their testimony into a particular classification or to summarize the witnesses' proposed testimony. *Id.* at 137–138; *State v. Wolfe,* 793 S.W.2d 580, 587 (Mo.App.1990).

The State disclosed to Mr. Williams its intent to call Officer Cox to testify and provided him with a copy of the officer's police report, including any and all memoranda and written or recorded statements made by Offi-

cer Cox. Rule 25.03 did not require the State to prepare and provide a summary of Officer Cox's anticipated trial testimony to defense counsel. Mr. Williams was aware that the police had discovered a shoe print in tar on the roof of the burglarized premises and that the print matched the soles of the sandals he was wearing when arrested. The trial court did not abuse its discretion in admitting Officer Cox's testimony concerning the shoe print and its similarity to the soles of Mr. Williams's sandals. Point one is denied.

## II. *BATSON* CHALLENGE

In his second point on appeal, Mr. Williams claims that the trial court erred in overruling his *Batson* challenge to the State's use of peremptory strikes to remove a venireperson from the jury. Specifically, he argues that the State's explanation for its striking an African–American venireperson was pretextual because a similarly situated white venireperson was not struck and the explanation was not supported by the record.

 The Equal Protection Clause prohibits the prosecutor's use of peremptory challenges to exclude jurors on the basis of race or gender. *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under the procedural guidelines established by the Missouri Supreme Court in *State v. Parker,* 836 S.W.2d 930, 939–940 (Mo. banc 1992), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), when a prosecutor's use of a peremptory strike is challenged in a timely fashion on the ground that in exercising the strike the prosecutor engaged in race discrimination, the prosecutor is obligated to give a valid race-neutral explanation for the strike regardless of whether a *prima facie* case of such discrimination is presented. *State v. Jackson,* 925 S.W.2d 856, 863 (Mo. App.1996). The explanation need not be plausible or persuasive, and it is presumed to be race-neutral unless a discriminatory intent is inherent in the explanation. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

■ If the prosecutor articulates a race-neutral reason for a challenged peremptory strike, the burden shifts back to the defendant to show that the State's proffered reason for striking the venireperson was merely pretextual and, in fact, was racially motivated. *Jackson*, 925 S.W.2d at 864. If the defendant makes such a showing, the trial court must decide if purposeful racial discrimination has been proven. *Id.*

■ The trial court is vested with considerable discretion in determining the plausibility of the prosecutor's reason and whether the prosecutor purposefully discriminated in exercising a peremptory strike. *State v. Gray*, 887 S.W.2d 369, 384 (Mo. banc 1994). An appellate court will not overturn a trial court's finding unless it is clearly erroneous. *Id.*

The decisive question in a typical *Batson* challenge inquiry is whether the prosecutor's race-neutral explanation for the strike will be believed. *State v. Davis*, 835 S.W.2d 525, 527 (Mo.App.1992)(citing *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Seldom will much evidence bearing on the issue be presented, and the best evidence often will be the demeanor of the attorney who exercises the challenge. *Id.* Thus, the trial court's ability to assess the credibility of the prosecutor is principal in determining the validity of the *Batson* challenge. *Id.*

■ On appeal, Mr. Williams challenges the State's strike of Venireperson Young, an African–American woman. The State explained that Ms. Young was struck because she had been in the store next to the Family Dollar Store and was familiar with the area around the stores. A venireperson's familiarity with the scene of the crime is a legitimate, race-neutral reason for exclusion of the panel member from the jury. *State v. Dean*, 898 S.W.2d 704, 706 (Mo.App.1995). *See also Winters v. State*, 673 So.2d 786, 790 (Ala.Crim.App.1995); *State v. Wylie*, 10 Conn.App. 683, 525 A.2d 528, 535 (1987).

Mr. Williams's counsel argued that the State's reason for striking Ms. Young was pretextual because other venirepersons, who were similarly situated, were not struck. He explained that other venirepersons testified that they were also familiar with the area.

During *voir dire*, six venirepersons stated that they were familiar with the area in the vicinity of the Family Dollar Store. Three panel members, including Ms. Young, testified that they had been in either the Family Dollar Store or the store next door. The other three venirepersons explained that they had merely driven by the stores or had been in the neighborhood. Of the three venirepersons who had actually been in the stores, one was struck for cause and the others, including Ms. Young, were struck because of their familiarity with the area. The State explained that it was concerned about the venirepersons who had actually been in the stores, as opposed to those who had merely driven by, because their familiarity with the location of the buildings, the terrain of the land, and the location of fences and alleys might affect whether they believe witness testimony commenting about those matters. The venirepersons who had not been in and around the stores were not struck.[2] The venirepersons not struck, one of whom was African–American, were not similarly situated, and Mr. Williams failed to show that the prosecutor's explanation was merely pretextual. The trial court's denial of Mr. Williams's *Batson* challenge was not clearly erroneous. Point two is denied.

### III. STATEMENT TO POLICE

In his final point on appeal, Mr. Williams claims that the trial court abused its discretion in overruling his motion to suppress the incriminating statement made to Officer Amelia Hull at the police station. He argues that the statement, made after hearing and waiving his *Miranda* rights, was tainted by Officer Cox's earlier interrogation at the scene of the crime, and was, therefore, inadmissible.

---

**2.** One venireperson was struck for cause for another reason.

At the suppression hearing, Officer Cox testified that as he stopped and frisked Mr. Williams outside the Family Dollar Store on the morning of September 29, 1995, he explained that he was investigating the Family Dollar Store alarm that was sounding. Mr. Williams denied any involvement in the burglary and stated that he had been walking down the street when he heard the alarm and saw two black men exiting the store. He proclaimed that he knew the names of the men but hesitated to give them to Officer Cox. In response to further questioning, Mr. Williams stated that his name was George Rowles, and he informed the officer of his purported social security number and address. Officer Cox then placed Mr. Williams in handcuffs and put him in the back seat of his patrol car. After further investigation at the crime scene, Officer Cox arrested Mr. Williams. Mr. Williams claims that his statement to Officer Cox was made as a result of a custodial interrogation conducted without the appropriate *Miranda* warnings and that his later statement to Officer Hull was tainted by his earlier statement to Officer Cox.

■ Appellate review of a trial court's ruling on a motion to suppress is limited to whether the evidence was sufficient to support the trial court's order. *State v. Smith,* 944 S.W.2d 901, 910 (Mo. banc 1997). The facts and all reasonable inferences are viewed in favor of the ruling. *State v. Dye,* 946 S.W.2d 783, 786 (Mo.App.1997). The weight of the evidence and the credibility of the witnesses are for the trial court's resolution. *State v. Kovach,* 839 S.W.2d 303, 307 (Mo.App.1992). The trial court's ruling will not be disturbed absent manifest error. *Id.*

■ Once the admissibility of a statement has been challenged, the State has the burden of proof to demonstrate by preponderance of the evidence that the statement was voluntary. *Smith,* 944 S.W.2d at 910. Voluntariness depends on the absence of coercive police activity. *Colorado v. Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986); *Smith,* 944 S.W.2d at 910; *State v. Skillicorn,* 944 S.W.2d 877, 889

(Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 568, —— L.Ed.2d —— (1997). The determination of police overreaching requires consideration of all relevant circumstances including the defendant's physical and mental state and the length of questioning. *Skillicorn,* 944 S.W.2d at 889. The test for voluntariness is whether under the totality of the circumstances the defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that the defendant's will was overborne at the time of the confession. *State v. Pierce,* 749 S.W.2d 397, 402 (Mo. banc 1988).

■ Statements made by an accused may be inadmissible as the "tainted fruit" of prior governmental misconduct. *State v. Vinson,* 854 S.W.2d 615, 622 (Mo.App.1993). A statement acquired in violation of the Fifth Amendment is not, under all circumstances, barred from use as evidence, however. *Id.* When multiple confessions have been made by the accused, statements given after appropriate warnings are not necessarily rendered inadmissible by a lack of proper warning before earlier in-custody statements, and the factual situation in each particular case must be examined to determine whether earlier unconstitutional conduct makes inadmissible the subsequent statement made after proper warning. *State v. Wright,* 515 S.W.2d 421, 426 (Mo. banc 1974); *State v. Franklin,* 760 S.W.2d 937, 943–944 (Mo.App.1988). "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether the coercion has carried over into the second confession." *Id.* at 623 (quoting *Oregon v. Elstad,* 470 U.S. 298, 310, 105 S.Ct. 1285, 1293–94, 84 L.Ed.2d 222 (1985)).

■ Mr. Williams's initial statement was made to Officer Cox at the scene of the crime in the early morning hours of September 29. His second statement was made later in the day at a different location, the police station, to a different police officer, Officer Hull. Additionally, Mr. Williams's first statement was not a confession. He did not admit that he burglarized the Family Dollar Store. The

statement was exculpatory. He denied being in the store and claimed to have seen two men running away from the store as he walked down the street. That statement alone would not have made a submissible case against Mr. Williams for burglary. *See Wright*, 515 S.W.2d at 427; *Franklin*, 760 S.W.2d at 944. Only after Mr. Williams was informed of his *Miranda* rights and waived them did he confess to being in the store and stealing certain items. Without deciding whether Mr. Williams was in custody when he made the statement to Officer Cox at the scene of the crime or whether Officer Cox's questioning was an interrogation, the statement made to Officer Cox did not render the statement later made to Officer Hull inadmissible. The evidence supported the trial court's decision overruling Mr. Williams's motion to suppress the statement made to Officer Hull. Point three is denied.

■ The judgment of conviction is affirmed. Entry of an order *nunc pro tunc* under Rule 29.12(c) to correct an error in the trial court's written judgment is necessary, however. *State v. Winters*, 900 S.W.2d 636, 640 (Mo.App.1995). In the written amended judgment, the trial court found Mr. Williams to be a "prior offender, only." In its original judgment and its oral judgment recorded in the record, the trial court found Mr. Williams to be a "prior and persistent offender" and sentenced him as such based on his guilty pleas to three prior class C felonies. Additionally, the original and amended judgments refer to Mr. Williams's status as a "prior offender" or a "prior and persistent offender" pursuant to section 558.019 as well as sections 558.016 and 557.036.4. Section 558.019 no longer employs the terms "prior offender" or "persistent offender." *State v. Maddix*, 935 S.W.2d 666, 671 n. 5 (Mo.App.1996). The case, therefore, is remanded to the trial court for correction of the amended judgment to reflect that Mr. Williams was found to be a "prior and persistent offender" pursuant to sections 558.016 and 557.036.4 and to remove the reference to section 558.019.

All concur.