STATE of Missouri, Respondent,

v.

Burmith Ray GIDEON, Appellant.

No. 15757.

Missouri Court of Appeals,
Southern District,
Division One.

March 3, 1989.

Richard L. Anderson, Kimberling City, for appellant.

Mark Rundel, Pros. Atty. of Stone County, Galena, for respondent.

CROW, Presiding Judge.

Burmith Ray Gideon ("defendant"), tried by the court without a jury, was convicted of driving while intoxicated, § 577.010, RSMo 1986. Defendant appeals, briefing one assignment of error which states:

"The court erred to defendant's prejudice in admitting Exhibit 'C' (the blood alcohol test report) in evidence, and in failing to sustain defendant's motion to suppress Exhibit 'C' and the results of the blood alcohol test; because the State produced no evidence the chemical reagent test ampoule used in conducting the test had been manufactured by a manufacturer listed as an authorized source under 19 C.S.R. 20–30.050; and, absent the evidence of the results of the blood alcohol test report, there was insufficient credible and competent evidence from which the defendant could properly be found guilty of the offense of driving while intoxicated."

Defendant was arrested March 27, 1988, by an officer of the Missouri State Highway Patrol when the officer observed defendant operating a pickup truck in an erratic manner on a Missouri highway. Defendant, according to the officer, "exhibited outward signs of intoxication" upon exiting the pickup.

The officer took defendant to a police station and administered a "breath test" using a "Breathalyzer 900A," manufactured by Smith & Wesson. The officer testified without objection by defendant that the test showed defendant's "blood alcohol content was .15." Additionally, the officer identified State's Exhibit C as "a blood alcohol test report form" prepared by the officer in administering the test to defendant. The exhibit, said the officer, showed that all steps prescribed for such test by the Division of Health were performed. The exhibit was received in evidence without objection, and confirmed that defendant's "BAC" was .15 per cent.

Nine pages later in the transcript, on cross-examination by defendant's lawyer, the officer was asked the source of the ampoule used in defendant's test. The officer answered: "A manufacturer called Tru–Test."

Defendant's lawyer thereupon asked the trial court to take judicial notice of 13 CSR 50–140.050 titled (according to defendant's lawyer) "Approved Breath Analyzers, Chemical Tests, Reagents and Standards," and 13 CSR 50–140.060 titled "Operating Procedures for Breath Analyzers."

Twelve pages later in the transcript, at the conclusion of his cross-examination of the officer, defendant's lawyer moved the trial court "to suppress the results of the breathalyzer examination" on the ground that the regulations did not list Tru–Test "as a source authorized by the State for the chemical reagent used in the breathalyzer that was used in this case." The trial court withheld ruling on the motion to allow the prosecutor an opportunity to show that the manufacturer of the ampoule was named in the Code of State Regulations.

The prosecutor subsequently asked the trial court to take judicial notice of "the 1988 edition of the Code of State Regulations which specifically list Tru–Test as a manufacturer o[f] ampoules." The trial court announced it would take judicial notice "of the most recent copy of the Code of State Regulations."

Defendant's attorney requested that if the trial court took judicial notice of a 1988 regulation, the court determine whether such regulation was effective on the date defendant's test was administered.

At the conclusion of the trial the court announced it was deferring its decision as to defendant's guilt or innocence in order to determine the regulations in force at the time of the alleged offense. A week later the trial court found defendant guilty and imposed sentence. This appeal followed.

In considering defendant's claim of error we note that at trial he directed the trial court's attention to 13 CSR 50–140.050 and 13 CSR 50–140.060, while in his point on appeal defendant directs us to 19 CSR 20–30.050. The apparent reason for this is that the rule presently numbered 19 CSR 20–30.050 was once numbered 13 CSR 50–140.050, and the rule presently numbered 19 CSR 20–30.060 was once numbered 13 CSR 50–140.060, as henceforth explained.

13 CSR 50–140.050, a rule promulgated by the Division of Health, as amended effective December 13, 1984, was entitled "Approved Breath Analyzers, Chemical Test Reagents and Standards," and provided, insofar as pertinent to this appeal:

"PURPOSE: This rule enumerates those breath analyzers, chemical reagents and standards which are approved for use in the methods approved by the [D]ivision [of Health] for the determination of the alcoholic content of blood from a sample of expired (alveolar) air.

. . . .

(2) Approved chemical reagents and standards:

| NAME OR ITEM | MANUFACTURER |
|---|---|
| . . . . | . . . . |
| Chemical test ampoules | Law Enforcement Products Inc., Hallstead, PA |
| . . . . | . . . ." |

The name "Tru–Test" appeared nowhere in 13 CSR 50–140.050.

On September 28, 1985, the Department of Health was created as a department of state government. H.C.S.S.B. 25, Laws 1985, pp. 591–92, codified as § 192.005, RSMo Supp.1985. The functions of the Division of Health, then an agency of the Department of Social Services, were transferred to the new Department of Health, and the Division of Health was abolished. § 192.005.1, RSMo Supp.1985.

As a result of the reorganization the Department of Health was assigned Title 19 of the Code of State Regulations "for the purpose of rulemaking." 11 MoReg 1941 (Aug. 15, 1986). Effective August 15, 1986, 13 CSR 50–140.050, quoted in pertinent part above, was renumbered 19 CSR 20–30.050. 11 MoReg 1941–42 (Aug. 15, 1986). The text of the rule remained unchanged.

On October 17, 1986, the Department of Health published notice of a proposed

amendment to 19 CSR 20–30.050. 11 MoReg 2387–88. The amendment became effective December 25, 1986. 11 MoReg 2768 (Dec. 15, 1986). The amendment did not affect the rule in any respect pertinent to this appeal.

In January, 1987, the Department of Health promulgated an emergency amendment to section "(2)" of 19 CSR 20–30.050. 12 MoReg 169 (Feb. 2, 1987). The purpose of the amendment was:

> "To list Tru–Test as the trade name of the chemical test ampoules of Law Enforcement Products, Inc., Hallstead, PA, rather than the general name, chemical test ampoules."

An "EMERGENCY STATEMENT" accompanying the amendment read:

> "The Department of Health has been advised that there have been legal problems associated with the use of this chemical test ampoule when it was identified by its trade name, Tru–Test, rather than by the manufacturer's name as required by this rule. The effect of this has been difficulty for the Department of Revenue in suspending drivers licenses of individuals arrested for drunk driving when this particular chemical test ampoule has been used."

The emergency amendment provided, in pertinent part:

> "(2) Approved chemical reagents and standards:

| NAME OR ITEM | MANUFACTURER |
| --- | --- |
| .... | .... |
| [Chemical test ampoules] | |
| Tru–Test | Law Enforcement Products, Inc., Hallstead, PA |
| .... | ...." |

The emergency amendment expired in May, 1987. However, the notice promulgating the emergency amendment stated:

> "A normal amendment covering this same material is published in the Notices of Proposed Rulemaking in this issue of the Missouri Register."

The normal amendment referred to in the above-quoted statement appeared at 12 MoReg 204 (Feb. 2, 1987), and was identical to the emergency amendment. The normal amendment became effective April 11, 1987. 12 MoReg 475 (Apr. 1, 1987), and was in effect when the test was administered to defendant March 27, 1988.

It is manifest from the above explanation that defendant's lawyer cited the wrong number at trial when he asked the court to take judicial notice of 13 CSR 50–140.050. The correct number for that rule at time of trial was 19 CSR 20–30.050, and it had been for some 19 months.

Defendant's lawyer also cited the trial court to 13 CSR 50–140.060. That rule was renumbered 19 CSR 20–30.060 simultaneously with the renumbering of 13 CSR 50–140.050 to 19 CSR 20–30.050 on August 15, 1986. 11 MoReg 1941–42 (Aug. 15, 1986). As defendant does not rely on 19 CSR 20–30.060 in this appeal, we need not set forth such rule in this opinion.

■ Turning now to the merits of defendant's assignment of error, we observe, as we did in *State v. Franklin,* 760 S.W.2d 937, 941 (Mo.App.1988), that in order to preserve for appellate review an objection to the admission of testimony the objection stating the grounds must be made at the time the evidence is sought to be introduced. *State v. Hernandez,* 325 S.W.2d 494, 496[3] (Mo.1959). Assignments of error regarding admissibility of evidence are not for consideration on appeal unless timely presented to the trial court when the evidence is offered. *Franklin,* 760 S.W.2d at 941[1]; *State v. Helm,* 624 S.W.2d 513, 516[7] (Mo.App.1981); *State v. McMillin,* 581 S.W.2d 612, 615–16[5] (Mo.App.1979).

■ In the instant case, as we have seen, defendant's verbal motion to suppress "the results of the breathalyzer examination" came long after Exhibit C and the officer's testimony regarding the results of the test had been received in evidence *without objection.* Consequently, defendant's assignment of error was not preserved for appellate review. However, inasmuch as the trial court apparently treated defendant's motion to suppress as a live issue, we shall give the point *ex gratia* review.

■ The import of the point appears in the following excerpt from the argument in defendant's brief:

"There is no *manufacturer* named 'TRU–TEST' approved and there was no evidence of any such manufacturer having been approved submitted the trial court.

There is admittedly an item referred to as 'Tru–test' in the cited provision of the Code of State Regulations; however, its manufacturer is Law Enforcement Products, Inc., of Hallstead, Pennsylvania."

Defendant maintains that inasmuch as the uncontradicted evidence before the trial court regarding the identity of the manufacturer of the ampoule used in defendant's test was that the ampoule was manufactured by Tru–Test, the trial court erred in failing to sustain the motion to suppress.

The State responds that Tru–Test is "the trade name under which the product of Law Enforcement Products, Inc. is sold." Therefore, says the State, as said manufacturer is specifically recognized as a source for chemical reagents, the use of said manufacturer's product was authorized and the result of defendant's blood alcohol test was properly admitted in evidence.

It is clear from the stated purpose of the emergency amendment to section "(2)" of 19 CSR 20–30.050 promulgated in January, 1987, quoted *supra*, that Tru–Test is a trade name of the chemical test ampoules manufactured by Law Enforcement Products, Inc., of Hallstead, Pennsylvania. Such ampoules were described as "Chemical test ampoules" in section "(2)" of 19 CSR 20–30.050 prior to the emergency amendment, and were authorized for use in approved breath analyzers. The emergency statement accompanying the emergency amendment explained that the amendment was promulgated because of confusion resulting from the identification of such ampoules by the trade name, Tru–Test, rather than by the manufacturer's name, Law Enforcement Products, Inc.

The instant case illustrates the confusion that the emergency amendment (and the normal amendment that followed it) were designed to remedy. The officer, when asked the *source* of the ampoule used in defendant's test, replied, "A manufacturer called Tru–Test." While no chemical reagent made by a manufacturer named Tru–Test was listed in 19 CSR 20–30.050 as an approved chemical reagent, an *item* named Tru–Test was listed in the rule as an approved chemical reagent, and the rule identified Law Enforcement Products, Inc., Hallstead, Pennsylvania, as the manufacturer of the item Tru–Test. We hold that the ampoule used in defendant's test was sufficiently identified as a chemical reagent approved for use by 19 CSR 20–30.050. The trial court did not err in receiving in evidence the results of the "breathalyzer examination" administered to defendant.

Defendant's assignment of error, as we comprehend it, concedes that if the test results were admissible there was sufficient evidence to support defendant's conviction of driving while intoxicated. The evidence was indeed sufficient.

■ Section 577.037, RSMo 1986, which was in force at all times material herein, provided that ten hundredths of one per cent or more by weight of alcohol in a person's blood shall be prima facie evidence that the person was intoxicated at the time the specimen was taken. The test administered defendant showed fifteen hundredths of one per cent by weight of alcohol in his blood. The evidence showed the test was administered within 45 minutes after the officer observed defendant driving the pickup.

Judgment affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.